272

## CHICAGO, M., ST. P. & PAC. R. CO. v. GOLDHAMMER.[*]

### No. 10191.

Circuit Court of Appeals, Eighth Circuit.

Sept. 28, 1935.

A. C. Erdall, of Minneapolis, Minn. (F. W. Root and C. O. Newcomb, both of Minneapolis, Minn., and C. S. Jefferson, of Chicago, Ill., on the brief), for appellant.

William H. DeParcq, of Minneapolis, Minn. (Robert J. McDonald, of Minne-

[*]Writ of certiorari denied 56 S. Ct. 382, 80 L. Ed. ——.

apolis, Minn., on the brief), for appellee.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment entered after verdict in a suit brought by appellee as plaintiff to recover damages for personal injury.

Plaintiff bases recovery upon a violation by appellant, defendant below, of the Safety Appliance Acts (Act of March 2, 1893, c. 196, 27 Stat. 531; amendatory Act, March 2, 1903, c. 976, 32 Stat. 943; amendatory Act, April 14, 1910, c. 160, 36 Stat. 298, 45 USCA § 1 et seq.).

The facts surrounding the accident are largely undisputed.

Plaintiff, an experienced switchman, was at the time of the accident in the employ of defendant in its Kinzie street yards in Chicago. He was on a night crew working from 12 o'clock midnight to 8 o'clock a. m. The accident happened between 1 and 2 a. m.

The car in controversy was a Chicago, Great Western car, was loaded, had been received by defendant from another carrier and was consigned to a business concern located upon a track in defendant's yard known as the "alley track."

Cars were standing on the alley track prior to the accident; and the car in controversy had been coupled to a switch engine preparatory to being kicked in upon the alley track.

By signal of the foreman of the crew with which plaintiff worked, the switch engine with the Chicago, Great Western car attached, was brought to a stop on main track No. 1, so that the free coupler of the car might be put in proper condition before the car was kicked in upon the alley track.

It was the usual custom that cars kicked in upon the alley track should have open the knuckle of the automatic coupler on the end of the car first entering the alley track, and should have the knuckle of the other coupler shut. This facilitated coupling onto the cars already on the alley track, whether at the time individual cars were afterward kicked in, or later when the cars were shoved together.

The intended movement of the Chicago, Great Western car here involved was that it should be pulled beyond the switch connecting with the alley track and then be kicked in upon that track.

The car in controversy being attached to the switch engine, but at a standstill, plaintiff examined the free coupler of the car. The knuckle was closed. He tried with the pin lift lever to open the knuckle, but was unsuccessful. He finally pulled the knuckle open with his hand, but in so doing the knuckle dropped to the ground. The knuckle pin was missing. This allowed the knuckle to fall.

Plaintiff tried to lift the knuckle back into place, but while doing so felt a sharp pain in his back and dropped the knuckle.

From that time on he did no further work.

The nature and extent of his injuries were in dispute and were left to the jury. The weight of the knuckle was about 60 to 65 pounds.

After the accident, a knuckle pin was procured. The knuckle was replaced in its proper position by the foreman of the crew, and the car was pulled up to the switch connection and kicked in on the alley track as originally planned.

Section 2 of the Safety Appliance Act of 1893, as amended (45 USCA § 2) reads as follows:

"*Automatic couplers.* It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

It is conceded that the defendant was engaged in interstate commerce.

The trial court instructed the jury that, as a matter of law, the coupler was in a defective condition; that at the time of the accident plaintiff was engaged in the discharge of his duty; and "was engaged in a coupling movement, and was preparing a coupler, so that it would couple by impact when it was moved upon the alley track and came in contact with another car." But the court left to the jury the question whether the defective coupler was the proximate cause of the accident and injury to plaintiff.

By its assignment of errors, defendant has presented to this court a number of questions for review: (1) Whether the coupler was defective within the purview of the Safety Appliance Act; (2) whether the car was being hauled or used within the meaning of the act; (3) whether plaintiff, at the time and place of the accident, was within the class of persons for whose benefit the coupler provision of the Safety Appliance Act was enacted; (4) whether the defect in the coupler was the direct and proximate cause of the accident and the resulting injury; (5) whether the court erred in its instructions to the jury.

We are of the opinion that the uncontradicted evidence renders unnecessary a discussion of the first two questions. We think affirmative answers are required as a matter of law.

As to the third question, there was considerable doubt until the recent decision by the Supreme Court in the case of Swinson v. Chicago, St. P., M. & O. R. Co., 294 U. S. 529, 55 S. Ct. 517, 79 L. Ed. 1041, 96 A. L. R. 1136. In that case the Supreme Court in its opinion said:

"The Safety Appliance Act (45 USCA § 1 et seq.) has been liberally construed so as to give a right of recovery for every injury the proximate cause of which was a failure to comply with a requirement of the act. * * * Although this section of the act was originally intended for 'greater security to men in coupling and uncoupling cars,' it was held in Davis v. Wolfe, 263 U. S. 239, 243, 44 S. Ct. 64, 66, 68 L. Ed. 284 [287], that a freight train conductor could recover for an injury resulting from failure of a grabiron, which he had grasped while standing on the sill step and signaling the fireman. There, the Court said that an employee 'can recover if the failure to comply with the requirements of the Act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection.' "

We think the case at bar is governed by the Swinson Case as to the third question raised.

Plaintiff, at the time of the accident, was performing an act in the line of his

duty. It was a natural and not unusual act. It was a customary act and known as an emergency repair. The necessity for the performance of the act was brought about by the negligence of defendant in · using a car having a defective coupler, in that the knuckle pin was missing. The point that no coupling was being made, and that none was immediately intended, is not, in our opinion, decisive.

This court has held. that preparation of the coupler for the impact is not distinct from the act of coupling. C., M. & St. P. Ry. Co. v. Voelker (C. C. A.) 129 F. 522, 70 L. R. A. 264.

We think plaintiff, at the time of the accident, was within the purview of the act.

▇ The fourth question is the important one in the case. As to this question defendant contends that if the coupler was defective, it was because the knuckle pin was missing; that defendant's negligence consisted in using this car with the coupler in the defective condition.

Defendant contends further, however, that this negligence expended itself and came to an end when the knuckle fell to the ground; that thereafter a new and independent cause was introduced, to wit, plaintiff's effort to lift the knuckle, and that this and not the missing pin was the real cause of the accident and injury; further, that the accident to plaintiff could not have been foreseen by defendant.

The argument is ingenious, but has not convinced.

Much has been written, and many decisions made by the courts in attempting to define and explain the phrase "proximate cause." We shall not try to add to the already abundant literature on the subject; nor do we think it would serve any useful purpose to review the almost numberless cases on the topic.

We find ourselves in accord with the statements made by the American Law Institute in its recent work on Restatement of the Law of Torts, vol. II, §§ 430–443. We quote two of the sections and the first sentence of the comment on § 443:

"Sec. 435. *Foreseeability of Harm or Manner of its Occurrence.*

"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

"Sec. 443. *Dependent Intervening Force.*

"An intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about.

"Comment:

"a. The rule stated in this Section applies *not only* to acts done by the person who is harmed or by a third person as a normal response to the situation created by the defendant's negligence, but also to acts of animals reacting thereto in a manner normal to them. * * *"

We think these statements clearly and correctly express the rules which should govern the rights of the parties to the present controversy.

A very early application of these principles is found in the case of Scott v. Shepherd (Squib Case) 2 W. Bl. 892, 3 Wils. 403; a very late application in the case of Chicago Great Western R. Co. v. Mackie, 60 F.(2d) 384 (C. C. A. 8).

Cases cited and discussed by plaintiff or defendant, or both, are, we think, not opposed to the principles above stated. See Chicago, G. W. R. Co. v. Schendel, 267 U. S. 287, 45 S. Ct. 303, 69 L. Ed. 614; Mpls., etc., Ry. Co. v. Goneau, 269 U. S. 406, 46 S. Ct. 129, 70 L. Ed. 335; Swinson v. C., St. P., M. & O. Ry. Co., 294 U. S. 529, 55 S. Ct. 517, 79 L. Ed. 1041, 96 A. L. R. 1136; Baltimore & O. R. Co. v. Tittle (C. C. A.) 4 F.(2d) 818; Erie R. Co. v. Russell (C. C. A.) 183 F. 722.

The submission of the fourth question to the jury was not, we think, prejudicial to the defendant.

As to the fifth question:

We have ·examined and considered the alleged errors in the charge of the trial court to the jury. The charges that the coupler was defective, and that plaintiff

was in the discharge of his duty and was engaged in a coupling operation, were, in our opinion, in view of the uncontradicted evidence, correct.

As to the other alleged errors, we are of the opinion that when the charge is considered as a whole and in connection with the undisputed facts, it is found to be impartial and accurate.

It is conceded by appellant that if the Safety Appliance Acts (45 USCA § 1 et seq.) are applicable and were violated by defendant, the defenses of assumption of risk and contributory negligence are not available.

The questions we have above mentioned, as well as others involved, have been ably and exhaustively discussed by respective counsel in their briefs, and have received careful consideration.

Except as above outlined, however, the questions have not been deemed such as to demand special discussion.

The judgment is affirmed.