Billy Gene Frederick, appellee, v. Paul Goff, appellant.

No. 49867.

(Reported in 100 N.W.2d 624)

January 12, 1960.

James & Greer, of Spencer, and Kelly, Spies & Culver, of Emmetsburg, for appellant.

Smith & Hanson, of Emmetsburg, for appellee.

GARFIELD, J.—Plaintiff, Frederick, was severely injured in the course of his employment as a farm hand for defendant, Goff. In this law action plaintiff alleges the injury was caused by defendant's negligence in providing defective equipment for plaintiff to work with. Trial resulted in a jury verdict for plaintiff upon which judgment was entered.

Defendant-appellant's sole contention here is that he was entitled to a directed verdict and judgment notwithstanding the jury verdict for three basic reasons: (1) There is no evidence of defendant's negligence; (2) the alleged negligence was not the proximate cause of the injury; (3) plaintiff assumed the risk. We will consider these grounds in this order: the first, the third and, finally, the second. We will first refer to the essential evidence. In accordance with our duty, it will be viewed in the light most favorable to plaintiff.

Plaintiff, a married man then 28, was injured Monday morning, July 15, 1957, while filling defendant's silo with oats ensilage. He had worked on defendant's farm since June 3, 1956. The equipment with which plaintiff was working was put in place during the preceding week by plaintiff and another employee, Randy Enger, under defendant's supervision. The wagonload of ensilage which was being blown into the silo when plaintiff was injured was put in place adjoining the ensilage blower the preceding Saturday. Plaintiff was working alone when injured. The equipment in use consisted of an ensilage blower, a self-unloading wagon which dumped the ensilage into the hopper of the blower, and two tractors which generated the power. One tractor supplied power to the blower, the other the power to move the false endgate and ensilage from the front of the wagon to its rear where it fell into the hopper of the blower.

The ensilage blower consisted of a hopper eight feet long, an auger at the bottom of the hopper by which ensilage was moved toward the fan and the fan that blew the ensilage up through a pipe extending to the top of the silo. We set out here a reproduction of an exhibit showing the ensilage blower.

Bottom of the pipe leading to the top of the silo was affixed to the top of the inverted funnel-shaped device at the upper left of the fan. The U-shaped rod at the fan end of the hopper, just below the name "Gehl", is the lever which starts and stops the auger. The lever is pulled toward the hopper to start the auger and pushed back against the fan to stop it. The rear of the wagon, eight feet wide, filled with ensilage was backed against the reader's right side of the hopper. Plaintiff was standing on the left, south, side of the hopper. The silo was on his

left, west—at the fan end of the blower. Defendant had directed plaintiff to unload the wagon filled with ensilage and to hurry in doing it so he could work in the field.

Shortly before plaintiff was injured the pipe leading to the top of the silo had become loose and turned out of position. Randy Enger had put up the pipe. Plaintiff stood on the left, south, edge or lip of the hopper, reached up and tightened the pipe with his hands. It could not be tightened readily while standing on the ground because the necessary leverage could not be applied from such position. When the blower was in use the pipe would turn several times a day and had to be tightened. Defendant himself had tightened the pipe while standing on top of the housing which enclosed the fan.

At about the time the pipe to the silo turned out of position the power which operated the unloading device on the wagon ceased to function when the knuckle came off the splined (grooved) end of the shaft on the power take-off. These two parts were worn, did not fit together properly and had become disconnected on several prior occasions, including three or four times while the same load was being unloaded that morning. The previous week these parts had slipped off about once to each load of ensilage put into the silo.

After turning the pipe into place plaintiff picked up the shaft that had fallen off and put it back in place but he could not connect the two grooved ends without driving them together with a bar. He then stepped down from the edge of the hopper to get a bar hanging on the silo to use for this purpose. After picking up the bar he stepped back onto the edge of the hopper with his right foot so he could drive the knuckle on to the end of the shaft that supplied power for unloading the wagon. He reached up for the endgate of the wagon, which was over the hopper, to pull himself upright onto its edge, when his right foot slipped into the hopper, fell against the auger and was propelled by it into the fan. In falling, his left hand inadvertently came in contact with the lever (before referred to) which started the auger moving. Within three or four seconds plaintiff was able to push the lever back against the fan and thus stop the auger. However the foot had already been injured.

Plaintiff could not put the disconnected knuckle back on the shaft while standing on the ground at the operator's side of the blower. On the three or four previous occasions that morning when the knuckle slipped off the shaft, plaintiff walked to his right around the wagon, climbed a board fence 4½ to 5 feet high and walked back between the wagon and silo to the power shaft. It took him about five minutes to do this and replace the shaft and knuckle. There was not more than three feet of clearance between the drive belt and the wagon where plaintiff walked. On these prior occasions he did not shut off the motor in the tractor (which would have stopped the drive belt from revolving) because the starter on the tractor was not working. To start the motor it was necessary "to short it out with a wrench onto the terminals to make contact with the starter."

Plaintiff had been working at this task about 45 minutes that morning and about a third of the load was unloaded when he was injured. When there were no stoppages a load of ensilage could be blown into the silo in 15 to 20 minutes. The added time on this occasion was mainly due to interruption of the power for the unloading device on the wagon when the knuckle slipped off the shaft and the time necessary to replace it.

Defendant was fully aware of the worn condition of the knuckle and splined end of the shaft. When the two parts became disengaged while in operation the grooves would be "jimmed" and had to be filed down before they could be put back together in working order. This occurred several times before the morning in question. Referring to these worn parts the week before plaintiff's injury, defendant had said, " 'We would have to see about fixing it—it should be fixed.' "

■ I. Defendant's negligence. It is a settled rule that an employer must use reasonable care to provide and maintain for his employees reasonably suitable and safe appliances, machinery and tools with which to work. Von Tersch v. Ahrendsen, 251 Iowa 115, 118, 119, 99 N.W.2d 287, 289, and citations; Degner v. Anderson, 213 Iowa 588, 589, 239 N.W. 790; Swaim v. Chicago, R. I. & P. Ry. Co., 187 Iowa 466, 477, 174 N.W. 384; 56 C. J. S., Master and Servant, sections 201, 206.

■ There is clear evidence the knuckle and splined end of the shaft which became disengaged were worn, defective and

not suitable for the work plaintiff was directed to perform with it and other equipment to which it was attached. Also, as stated, that defendant knew of this defective condition in time to have repaired it before plaintiff was injured. The finding is warranted, too, this condition rendered the equipment unsafe for plaintiff to work with. There is little doubt there is substantial evidence to support the one specification of negligence submitted to the jury—providing defective equipment for plaintiff to work with.

II. Assumption of Risk. The contention urged here that defendant was entitled to a directed verdict, or judgment notwithstanding the jury verdict, because plaintiff assumed the risk of injury, was not made in the trial court as a ground of the motion to direct, motion "for judgment notwithstanding", or otherwise. We have frequently held a motion to direct may not be supported upon appeal by a ground not urged in the trial court. John Rooff & Sons, Inc., v. Winterbottom, 249 Iowa 122, 127, 86 N.W.2d 131, 135, and citations. These precedents merely apply the familiar rule that an appellant may not urge for the first time here a contention not raised in the trial court. Neibert v. Stone, 247 Iowa 366, 367, 368, 73 N.W.2d 763, 764, and citations; Signer v. Crawford County Board of Education, 247 Iowa 766, 768, 76 N.W.2d 213, 214, and citations. Defendant is therefore not entitled to urge this contention now.

Notwithstanding the above we will say we think assumption of risk does not appear as a matter of law and it was proper to submit this issue to the jury. It is an affirmative defense and the burden to prove it rested upon defendant. Erickson v. Erickson, 250 Iowa 491, 498, 94 N.W.2d 728, 732, and citations; Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1261, 30 N.W.2d 97, 102, and citations. It is seldom a party who has the burden on such an issue establishes it as a matter of law. Jackson case and citations; Ruble v. Carr, 244 Iowa 990, 993, 994, 59 N.W.2d 228, 230, 231, and citations.

If defendant was negligent in the respect alleged plaintiff did not assume the risk of injury therefrom by continuing in the work unless in the usual and ordinary course of his employment it was his duty to repair the equipment or remedy the defect therein, and even if such were his duty, he assumed

no risk therefrom unless the danger from its use was imminent so a reasonably prudent person would not continue in the work. Section 88.14, Code, 1958, quoted in Erickson v. Erickson, supra, at page 501 of 250 Iowa, page 733 of 94 N.W.2d, as construed by the Erickson decision and others therein cited, so provides. Johnson v. Kinney, 232 Iowa 1016, 1020, 7 N.W.2d 188, 191, 144 A. L. R. 997, 1001, and citations. This statute states it is not to be construed to include risks incident to the employment.

 It certainly does not appear as a matter of law it was plaintiff's duty to repair or remedy the alleged defective equipment, that danger from its use was imminent so a reasonably prudent person would not continue in the work, or that the risk of such an injury was incident to the employment. Erickson case, supra, and citations; Jackson v. Chicago, M., St. P. & P. R. Co., supra, 238 Iowa 1253, 1261, 1262, 30 N.W.2d 97, 102, and citations.

 III. Proximate cause. The vital question is whether the finding is warranted that defendant's alleged negligence was the proximate cause of plaintiff's injury. Negligence itself is irrelevant in the absence of some causal connection between it and the injury. Brewer v. Johnson, 247 Iowa 483, 486, 72 N.W.2d 556, 558, and citations. See also section 430, Restatement, Torts.

The gist of defendant's argument on this question is that plaintiff's acts in stepping upon the hopper with a bar in his hand and ensilage on the soles of his shoes, slipping into the auger and initiating its forward movement by striking the lever accidentally are independent acts which broke the chain of natural cause and effect between the claimed negligence of defendant and the injury. On cross-examination plaintiff testified the soles of his shoes were probably moist or damp and perhaps some silage was sticking to them, but he could not say whether he knew this when he got up on the hopper.

Substance of the argument for plaintiff is that he was injured while attempting to remedy temporarily the defect in the knuckle and shaft and his acts are of such a character as naturally and in the ordinary course of events arise out of the situation produced by the alleged negligence.

 Since this is an action by an employee against an employer to recover for negligence plaintiff was not required to

plead or prove his freedom from contributory negligence but defendant might plead and prove contributory negligence in mitigation of damages. Rule 97, Rules of Civil Procedure; Erickson v. Erickson, supra, 250 Iowa 491, 495, 496, 94 N.W.2d 728, 730, and citations. Defendant's answer alleges the injury was caused, or contributed to, by plaintiff's negligence. The trial court submitted to the jury the issue of plaintiff's contributory negligence in mitigation of damages. This was proper. Johnson v. Kinney, supra, 232 Iowa 1016, 1020, 7 N.W.2d 188, 191, 144 A. L. R. 997, 1002, and citations.

In considering the causal relation necessary to responsibility for negligence the general rules are set out in Restatement, Torts, sections 430 to 435. Christensen v. Sheldon, 245 Iowa 674, 682, 63 N.W.2d 892, 897, 48 A. L. R.2d 522.

Section 431 of the Restatement says: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

■ We have used this language quite similar to that just quoted: "Nor will the fact that some other cause operates with the defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable *in some material degree* to his want of due care [citations]." (Emphasis added.) Swaim v. Chicago, R. I. & P. Ry. Co., supra, 187 Iowa 466, 471, 174 N.W. 384, 386 (certiorari denied 252 U. S. 577, 40 S. Ct. 344, 64 L. Ed. 725). In considering the issue of proximate cause we have frequently cited the Swaim case with approval.

Section 435, Restatement, Torts, provides: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

■ Much the same thought is expressed in many of our opinions. Priebe v. Kossuth County Agricultural Assn., Inc., 251 Iowa 93, 100, 99 N.W.2d 292, 296, in referring to actionable negligence, states "it is not necessary that defendant could have foreseen the particular injury that resulted provided it should have foreseen its omission to act would probably result in injury

of some kind to some person [citations]." To like effect is Chenoweth v. Flynn, 251 Iowa 11, 16, 99 N.W.2d 310, 313; Gray v. City of Des Moines, 221 Iowa 596, 599, 265 N.W. 612, 613, 104 A. L. R. 1228, 1230; Godbey v. Grinnell Electric & Heating Co., 190 Iowa 1068, 1076, 181 N.W. 498, and citations. The trial court here instructed the jury in accord with the rule just stated and no objection to the instruction was made.

▮▮▮ Section 443 of the Restatement expresses the rule on which plaintiff places special reliance:

"An intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about.

"Comment: a. The rule stated in this Section applies * * * to acts done by the person who is harmed * * *. It is not necessary that an act which is done by the person harmed or by a third person should be 'reasonable'; that is, that the act should be one which a reasonable man would regard as not involving an unreasonable risk to himself or others. * * * If it be done by the person who is harmed and is unreasonable in the sense above stated, it may amount to contributory negligence which as such prevents him from recovering (see section 467), but the actor's negligent conduct is none the less the legal cause of the harm. * * *."

Comment b under section 443 further clarifies what has just been quoted. To like effect are section 447 (c) and Comment h thereunder.

▮▮▮ We find little dissent from recognition by the courts of the rule expressed in section 443, Restatement, Torts. We are not persuaded we should disagree with it. The rule appears to be applicable here and to support submission to the jury of the issue of proximate cause. Reasonable minds could conclude defendant's conduct in furnishing plaintiff defective equipment with which to do the work required of him was a substantial factor in bringing about his injury or, in language we have used, the injury "is traceable in some material degree" to the alleged negligent act. They could also find plaintiff's attempt to adjust or temporarily repair the defective parts was a normal response

to the stimulus of the situation (stoppage of the unloading device) created by such negligent act. Plaintiff may have been contributorily negligent but, as stated, this does not bar recovery. It only mitigates or reduces the damages.

We have approved section 447(c), Restatement, Torts. Blessing v. Welding, 226 Iowa 1178, 1183, 1184, 286 N.W. 436, 439. For present purposes it is the substantial equivalent of section 443. (See Comment h under 447.)

We cite some of the precedents which, on comparable facts, support our conclusion. Minneapolis, St. P. & S. S. M. Ry. Co. v. Goneau, 269 U. S. 406, 46 S. Ct. 129, 70 L. Ed. 335, 25 N. C. C. A. 443; New York, N. H. & H. R. Co. v. Leary, 1st Cir., Mass., 204 F.2d 461; Anderson v. Baltimore & O. R. Co., 2d Cir., N. Y., 89 F.2d 629 (certiorari denied 302 U. S. 696, 58 S. Ct. 14, 82 L. Ed. 538); New York Central R. Co. v. Brown, 6th Cir., Mich., 63 F.2d 657; Eglsaer v. Scandrett, 7th Cir., Wis., 151 F.2d 562; Chicago, M., St. P. & P. R. Co. v. Goldhammer, 8th Cir., Minn., 79 F.2d 272 (certiorari denied 296 U. S. 655, 56 S. Ct. 382, 80 L. Ed. 467); Alabama Great Southern R. Co. v. Smith, 256 Ala. 220, 54 So.2d 453; O'Brien v. Chicago & N.W. Ry. Co., 329 Ill. App. 382, 68 N.E.2d 638, 646; Phillabaum v. Lake Erie & W. R. Co., 315 Ill. 131, 145 N.E. 806; Warning v. Thompson, Mo., 249 S.W.2d 335, 30 A. L. R.2d 1176, 1187, 1188; Sprankle v. Thompson, Mo., 243 S.W.2d 510, 518; Olney v. Boston & M. R. R., 71 N. H. 427, 52 A. 1097; Missouri-Kansas-Texas R. Co. v. Evans, 151 Tex. 340, 250 S.W.2d 385.

Most of these decisions involve a violation of the Federal Safety Appliance Act but are directly applicable on the issue of proximate cause. Davis v. Wolfe, 263 U. S. 239, 243, 44 S. Ct. 64, 66, 68 L. Ed. 284, 287, states: "* * * an employee cannot recover under the Safety Appliance Act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; * * *."

We will briefly review the precedents cited. In each case the question whether defective equipment was a proximate cause of the injury was held to be for the jury.

In Minneapolis, St. P. & S. S. M. Ry. Co. v. Goneau, supra, a railroad brakeman was injured when he lost his balance and fell backwards over the side of a bridge while attempting to adjust a defective automatic coupler for the purpose of coupling two freight cars. The court held (at page 410 of 269 U. S., page 131 of 46 S. Ct., page 339 of 70 L. Ed.), "the defective coupler was clearly a proximate cause of the accident as distinguished from a condition creating the situation in which it occurred."

In New York, N. H. & H. R. Co. v. Leary, supra, a conductor on a train that came to a stop because of a defective air hose was walking back along the track with another hose to replace the defective one when he slipped and fell off an open trestle and was injured.

In Anderson v. Baltimore & O. R. Co., supra, the alleged wrongful act was failure to furnish " 'a proper sanding apparatus, which shall be maintained in safe and suitable condition for service' ", in violation of the Boiler Inspection Act. A fireman was struck and killed by an engine of another railroad while bending over to look at a pipe on the sanding apparatus which had failed to function properly. In holding the issue of causation should have been submitted to the jury the court said (at page 631 of 89 F.2d):

" * * * The defendant argues that Anderson's own act in placing himself in a position of danger where he would be struck by the Erie engine was the proximate cause of his death, and the defect in the sanders only a remote cause or condition of the accident. But the jury might reasonably find from the evidence that he had taken this position in an effort to remedy the defect and get the sand to flow * * * and that his conduct was a normal reaction to the stimulus of a situation created by the defendant's violation of its statutory duty. Granting that he was negligent in not observing the approaching engine, his contributory negligence does not preclude recovery in an action based on violation of the statutory duty, unless his act can be deemed a new and superseding cause of the accident. It is not considered as such when it is a normal reaction to the situation created by the defendant's wrong." (Citing cases)

In New York Central R. Co. v. Brown, supra, an automatic coupler on a car failed to "make" while a crew was attempting

to couple a switch engine to it and the car started moving toward a tunnel. In hurriedly reaching for a brake wheel from a ladder on the side of the car a brakeman received a shock from an overhead electric rail, fell and was injured. The opinion states (at page 658 of 63 F.2d):

"Were it not for a rule of law that has generally come to be recognized in determining whether there is unbroken connection between wrongful act and injury * * *, it might be considered that the failure of the appliance in the instant case merely created an incidental condition or situation in which the accident otherwise caused resulted in injury, * * *. Brown was not engaged in making a coupling operation, the defective coupling was not the instrumentality which injured him, and there would be no liability if some new and independent cause, such as his own negligence, intervened, and became the sole proximate cause of his injury.

"(1) But it has long been settled that the chain of causation is not broken by an intervening act which is a normal reaction to the stimulus of a situation created by negligence, * * *. This rule of causation has been repeatedly recognized by this court. * * *." (Citations)

In Eglsaer v. Scandrett, supra, 151 F.2d 562, an engineer was fatally injured while attempting to fix an automatic bell ringer on an engine, probably in trying to grab an unattached rope. The trial court was reversed for holding as a matter of law no causal connection between the injury and defective appliance was shown.

In Chicago, M., St. P. & P. R. Co. v. Goldhammer, supra, 79 F.2d 272, the knuckle of an automatic coupler on which the knuckle pin was missing fell to the ground. In attempting to lift the heavy knuckle back in place a switchman felt a sharp pain in his back, dropped the knuckle and was injured. Defendant contended its negligence ended when the knuckle fell to the ground and the effort to lift it was a new and independent cause of the injury. The Eighth Circuit held it was not error to submit to the jury the issue of proximate cause, citing Restatement, Torts, sections 435, 443, and some decisions.

In Alabama Great Southern R. Co. v. Smith, supra, 256 Ala.

220, 54 So.2d 453, an engineer was injured while attempting to tighten a defective, leaking petcock on a water pump when the air pump on which his foot was resting started to operate and the vibration therefrom caused him to lose his balance, fall to the ground and be injured.

In O'Brien v. Chicago & N.W. Ry. Co., supra, 329 Ill. App. 382, 68 N.E.2d 638, 646, a fireman got cold and wet in filling the water tank on the engine by reason of inadequate facilities provided by defendant. It was held his act in climbing over the coalbin from which he fell after warming himself was not necessarily an intervening act which destroyed the chain of causation.

In Phillabaum v. Lake Erie & W. R. Co., supra, 315 Ill. 131, 145 N.E. 806, a switchman went between cars to adjust couplers so they would couple by impact, when the engineer backed the engine and attached cars against him and he was injured. It was held to be a jury question whether furnishing the defective coupler was a proximate cause of the injury or merely a condition by which it was made possible.

In Warning v. Thompson, supra, Mo., 249 S.W.2d 335, 30 A. L. R.2d 1176, an engineer on defendant's railroad was injured when he was unable to grasp firmly a rail on the outside of the engine and fell from the pilot steps while attempting to climb to the catwalk to adjust defective sanders on the engine. The court held the jury could properly find a proximate cause of plaintiff's injuries was failure of the defective sanders to function. The opinion follows and quotes at length from Anderson v. Baltimore & O. R. Co., supra, 89 F.2d 629.

In Sprankle v. Thompson, supra, Mo., 243 S.W.2d 510, a switchman went to the top of a freight car to release an inefficient hand brake. When he straightened up he was struck by a canopy extending out from a building, and injured. The finding was upheld that failure to equip the car with an efficient hand brake was a proximate cause.

In Olney v. Boston & M. R. R., supra, 71 N. H. 427, 52 A. 1097, an engineer fell from an engine while attempting to tighten a loose armhole cover which fell off as he touched it. When he instinctively reached for the cover he lost his balance and fell.

In Missouri-Kansas-Texas R. Co. v. Evans, supra, 151 Tex.

340, 250 S.W.2d 385, a brakeman was injured while attempting to disconnect a ruptured airhose on a freight train so as to replace it with a new hose.

See also Central Wisconsin Trust Co. v. Chicago & N.W. R. Co., 232 Wis. 536, 287 N. W. 699, 701, 702.

Of our own precedents, these may be cited as furnishing some support for our holding here. Although the facts are not closely in point, the decisions seem at least somewhat analogous on principle. Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120; Johannsen v. Mid-Continent Petroleum Corp., 232 Iowa 805, 5 N.W.2d 20; Blessing v. Welding, supra, 226 Iowa 1178, 286 N.W. 436; Gray v. City of Des Moines, supra, 221 Iowa 596, 265 N.W. 612, 104 A. L. R. 1228; Godbey v. Grinnell Electric & Heating Co., supra, 190 Iowa 1068, 181 N.W. 498; Johnson v. Plymouth Gypsum Plaster Co., 174 Iowa 498, 156 N.W. 721; Fishburn v. Burlington & N.W. R. Co., 127 Iowa 483, 103 N.W. 481; Knapp v. The Sioux City & P. R. Co., 65 Iowa 91, 21 N.W. 198, 54 Am. Rep. 1.

We said in Chenoweth v. Flynn, 251 Iowa 11, 17, 99 N.W.2d 310, 314, it is a rule too well established to require the citation of authority that the question of proximate cause is generally for the jury to determine. To like effect is Blessing v. Welding, supra, 226 Iowa 1178, 1185, 286 N.W. 436, 440. We think it was not error to submit the issue to the jury here.—Affirmed.

All JUSTICES concur.