Lester OLSON, Appellee,

v.

Ernest KATZ, Appellant.

No. 54953.

Supreme Court of Iowa.

Oct. 18, 1972.

Laird, Burington, Bovard & Heiny, Mason City, for appellant.

Finley & Teas, Mason City, for appellee.

RAWLINGS, Justice.

The accident which culminated in this law action occurred on the farm of defendant-employer (Ernest Katz) when plaintiff-employee (Lester Olson) became entangled in a corn elevator power take-off shaft connection.

Plaintiff essentially alleged defendant was negligent in failing to (1) furnish plaintiff a safe working place, (2) provide him with safe working tools and machinery.

At close of all evidence trial court overruled defendant's motion for a directed verdict. Judgment was subsequently entered on a jury verdict for plaintiff. Motions by defendant for judgment notwithstanding the verdict and for new trial were overruled. He appeals. We affirm.

Basically defendant here contends trial court erred in submitting the case to a jury because plaintiff failed to establish any actionable breach of duty owing him by defendant.

The record discloses plaintiff was injured November 18, 1967, while elevating corn into a crib. Olson, then 55, had been engaged in farm or construction work and the operation of related machinery for at least 20 years. He was first employed by defendant in 1965, primarily assisting him harvest corn as hereafter described.

In 1966 Olson again worked several weeks for Katz, at least six or seven days being devoted to elevating corn with the same machinery in use during the 1965 employment period and at time of the incident here involved.

Olson had worked more than four weeks for Katz prior to occurrence of the instant accident.

A John Deere elevator was used to carry corn up and into the crib. Elevation force was supplied by means of a four foot tractor connected power take-off shaft. This was covered by an attached factory supplied expandable inverted U shaped metal shield. It was open at the bottom but extended one and a half to two inches below the shaft which was about three feet above and parallel to the ground.

At time of the accident both parties hereto were engaged in filling a large crib. Defendant was inside distributing the corn, plaintiff was on the ground. Finally defendant directed that plaintiff stop the elevator as the crib was full. Defendant next inquired regarding the amount of corn left and plaintiff replied, 10 to 15 bushels. Soon thereafter defendant, from his position in the crib, instructed plaintiff to elevate the corn on hand and pick up all the loose ears around the elevator because it would have to be reset. Defendant had in the crib with him the only scoop shovel available for picking up the ear corn which was under the power take-off assembly. In carrying out defendant's orders plaintiff stooped and reached under the revolving power take-off shaft. With his hands full of corn, plaintiff straightened up and as he did so his clothing was caught by fittings on the revolving shaft. He was thrown through the air and suffered serious bodily injury.

The elevator in use had been purchased by Katz from a neighboring farmer about six years prior to Olson's accident. Both the machine and shaft shield were then in good condition. Since acquisition by Katz no one had ever been injured by the mechanism.

Plaintiff's witness, Norville J. Wardle, an agricultural safety engineer, stated the safety shield here involved was standard equipment on John Deere products from 1936 to about 1958. Since 1959, however, an improved all-enclosing shield has been available. On the same subject Harold Woollums, a John Deere dealer, testified (1) the company has never recalled the original shield, (2) parts are still made for

it, (3) he had never before heard of an accident arising from use of the original when properly in place, (4) parts are available which, with some machine tooling and at relatively small cost, will convert the original to a new type guard.

Defendant's testimony discloses no one had every told him the shield on his machine was not adequately protective, and he lacked any knowledge regarding production or availability of a new shield.

Olson concedes the existing protective device was properly in place; it and the power take-off were in good working order, i. e., were not defective in any respect. He also knew the shaft rotated 540 times a minute, had worked with and was fully aware of the knuckle and injury causing connecting bolts, realized the inverted U shaped shield was open at the bottom, and recognized the existence of some peril in reaching under the revolving shaft if clothing should come in contact with it.

I. As stated in Dobson v. Jewell, 189 N.W.2d 547, 550 (Iowa 1971):

"Our review is on errors assigned. Rule 334, Rules of Civil Procedure. In considering the sufficiency of the evidence of defendants' negligence as against the motions for directed verdict and judgment notwithstanding the verdict, we view the evidence in the light most favorable to plaintiff. This is the effect of rule 344(f), par. 2, R.C.P. Ling v. Hosts Incorporated, 164 N.W.2d 123, 124 (Iowa 1969). It is likewise viewed when appeal is taken from judgment on verdict for plaintiff. *We need consider only the evidence favorable to plaintiff whether or not it is contradicted.* Miller v. Young, 168 N.W.2d 45, 51 (Iowa 1969)." (Emphasis supplied).

II. It should be prefatorily noted, much of defendant's argument might conceivably support an affirmative defense of assumption of risk. See The Code 1966, Section 88.14. But that defense, still available in employer-employee tort actions, was nei-

ther pled nor an issue in this litigation. See generally Rosenau v. City of Estherville, 199 N.W.2d 125, 130–133 (Iowa 1972).

■ Defendant did, however, plead contributory negligence on plaintiff's part. But that relates only to mitigation of damages in the field of employer-employee tort law. See Iowa R.Civ.P. 97; Frederick v. Goff, 251 Iowa 290, 297–298, 100 N.W.2d 624 (1960). See generally 18 Drake L. Rev. 155, 156–162 (1969).

III. Also in Dobson, 189 N.W.2d at 552, this court declared:

"There is an obligation on the master or employer to use reasonable care and diligence to provide and maintain a reasonably safe place for his employees to work. It is both statutory and by judicial pronouncement. Van Aernam v. Nielsen, 261 Iowa 1115 at 1122, 157 N. W.2d 138 at 143 and authorities cited.

"Speaking of the duty of the master or employer to furnish his employee reasonably safe instrumentalities with which to work, we said in Kregel v. Kann, 260 Iowa 1330, 1333–1335, 152 N.W.2d 534, 536–537:

" ' "It is a settled rule that an employer must use reasonable care to provide and maintain for his employees reasonably suitable and safe appliances, machinery and tools with which to work." * * * [citing authorities]

" 'However, the employer is not an insurer of the safety of the tools, machinery or appliances, nor of the safety of the employee in using the instrumentalities furnished but is only liable for negligence. * * * [citing authorities]

" 'The employer must exercise reasonable care to eliminate dangers which are not the usual or ordinary incidents of the service when he has exercised such care. * * * [citing authorities]

" ' * * *

" 'In determining whether the employer exercised reasonable care there is no absolute standard to which his conduct must conform. Although the employer's duty is to exercise reasonable care whether the work is comparatively safe or extremely dangerous, the duty becomes more imperative as the risk increases. * * * [citing authorities]

" 'While the duty of the employer to provide his employee with reasonably safe tools with which to work is owed alike to the young and old, skilled and unskilled, whether the employer has performed such duty depends in some degree on the experience, maturity, intelligence, and discretion of the employee. * * * [citing authorities].'

" * * *

"(W)here recovery is sought on the ground of failure of the master or employer to provide employees a safe place in which to work or safe appliances with which to do their work, the burden is upon plaintiff to establish that the place of work or instrumentalities were unsafe or defective because of the employer's failure to exercise the duty imposed upon him and such failure was the legal cause of harm to plaintiff. 53 Am.Jur. 2d, Master and Servant, section 373. See also Restatement, Second, Torts, section 431. We have repeated the Restatement's definition of proximate cause frequently. (Authorities cited)."

See also Bengford v. Carlem Corporation, 156 N.W.2d 855, 863 (Iowa 1968).

And as aptly stated in Kregel v. Kann, 260 Iowa 1330, 1335, 152 N.W.2d 534, 537 (1967): "Until we have a law such as Workmen's Compensation applicable to farm employment there is no absolute liability of the employer for injuries to his employee." See also 13 S.D.L.Rev. 1 (1968).

IV. We now turn again to the testimony of Norville J. Wardle, called as a witness for plaintiff. At close of a lengthy hypothetical question inquiry was made as to whether, based thereon, he had an opinion regarding cause of the accident. Defendant's attorney then interposed this objection:

"That's objected to as calling for the opinion and conclusion of the witness and no statement of fact; no proper foundation laid; the witness not having shown himself qualified; invading the province of the jury. And I would like to be heard on this in the absence of the jury."

With trial court's permission the witness answered affirmatively. When asked to state that opinion defense counsel renewed the above objection, which was overruled. Thereupon Mr. Wardle stated: "Well, my opinion of this is as the result of my experience and study of this area, that the accident and injury resulted because the safety guards that are available were not used."

Defendant's attorney then moved the answer be stricken for all reasons set forth in the objection quoted above. That too was overruled.

On appeal it is urged by defendant, trial court erred in allowing introduction of expert testimony regarding cause of the accident. We are not so persuaded.

Unquestionably Mr. Wardle is a qualified agricultural safety engineer. By the same token his testimony was that of an expert in the field here involved. See Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 656 (Iowa 1969). See generally McCormick on Evidence, § 13 at 28–29 (1954); 19 Drake L.Rev. 245, 256–271 (1970).

Sufficiency of defendant's objection, quoted above, will next be considered. In Bengford v. Carlem Corporation, supra, an expert was called upon to voice an opinion to which an objection was interposed that it called for an opinion and conclusion of the witness and invaded the province of the jury. As to the adequacy thereof this

court held it was essentially worthless standing alone, then said, 156 N.W.2d at 865:

"Opinion and conclusion evidence is not inadmissible solely on that ground. *Some specific reason for its exclusion must be stated.* It is the duty of counsel to point out the particular defect or defects." (Emphasis supplied).

It is to us apparent the defense objection instantly involved was so lacking in specificity as to be of no force or effect. In other words it alerted trial court to everything in general and nothing in particular upon which it was based. See State v. Wright, 191 N.W.2d 638, 642 (Iowa 1971); U. S. Homes, Inc. v. Yates, 174 N.W.2d 402, 405 (Iowa 1970); Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 656 (Iowa 1969); In re Estate of Ronfeldt, 261 Iowa 12, 26–27, 152 N.W.2d 837 (1967); State v. Hodge, 252 Iowa 449, 459–460, 105 N.W.2d 613 (1960); Grismore v. Consolidated Products Co., 232 Iowa 328, 341–342, 5 N.W.2d 646 (1942). See generally Rabata v. Dohner, 45 Wis.2d 111, 172 N.W.2d 409, 416–417 (1969); 7 Wigmore on Evidence, §§ 1950–1951 (3d ed.); McCormick on Evidence, § 12 at 24; 19 Drake L.Rev. at 272. Neither was opposing counsel advised by the objection as to any specific deficiency so that timely correction could be made. See Stom v. City of Council Bluffs, 189 N.W.2d 522, 530 (Iowa 1971).

Furthermore, in Henneman v. McCalla, 260 Iowa 60, 77–78, 148 N.W.2d 447, 457 (1967), we quoted this from Mundy v. Olds, 254 Iowa 1095, 1104, 120 N.W.2d 469 (1963):

" 'The receipt of opinion evidence, lay or expert, rests largely in the sound discretion of the trial court. Waterloo Sav. Bk. v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1374, 60 N.W.2d 572, and cases cited. Also see, for a complete discussion of the law and authorities on such opinion evidence, Grismore v. Con-

solidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654.

" 'It is true generally that an opinion is not to be received upon an ultimate issue of fact if the jury is itself equally qualified to pass upon such an issue. McKeever v. Batcheler, 219 Iowa 93, 97, 257 N.W. 567; Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635. However, *considerable leeway is allowed in this field of evidence for the reason that no matter how the opinion question is phrased or formulated, it remains an opinion which the jury is at liberty to reject. Therefore, only in clear cases of abuse would an admission of such evidence be found prejudicial. * * *.'* " (Emphasis supplied).

See also Schmitt v. Jenkins Truck Lines, Inc., supra; Dougherty v. Boyken, 261 Iowa 602, 607, 155 N.W.2d 488 (1968); 19 Drake L.Rev. at 270.

And as indicated above, expert opinion testimony, even if uncontroverted, is not binding on the trier of facts. It may be accepted in whole, in part, or not at all. See Weisbrod v. State, 193 N.W.2d 125, 128 (Iowa 1971).

Moreover, since 1942 this court has repeatedly held, (1) expert opinion evidence is admissible when it will aid the jury in properly determining the question before them; (2) the fact that a matter inquired about is vital and controlling, or even the ultimate fact to be determined, is not a valid reason for its rejection; (3) no witness should, however, be permitted to give an opinion directly that a person is guilty or innocent, criminally responsible or irresponsible, negligent or not negligent, or that he had capacity to execute a will, deed or like instrument, as these stand as mixed questions of law and fact. See e.g., Grismore v. Consolidated Products Co., 232 Iowa 328, 341–360, 5 N.W.2d 646 (1942). See also 7 Wigmore on Evidence, § 1976 (3d ed.); Rules 702–705, Revised Draft of Proposed Rules of Evidence for the United

States Courts and Magistrates, 51 F.R.D. 317, 403–406 (1971).

We are satisfied the witness Wardle was asked to and did express an opinion regarding only the accident cause. He also opined, protection against an accident of the nature here concerned could have been provided by use of a barricade or other available guard which would keep a worker from getting into the instantly hazardous area. Never did Mr. Wardle testify that defendant's failure to equip the power take-off machinery with the latest, most modern available shield constituted negligence. Neither was the jury so directed. Rather, by instruction 8, the jury was properly told:

"The law provides that an employer must use reasonable care to provide and maintain for his employees, reasonably suitable and safe appliances, machinery and tools with which to work.

"The employer is not required to provide appliance, machinery and tools which are absolutely safe, nor required to maintain the same in such condition that an accident to the employee could not happen. The employer is not an insurer of the employee's safety, but must exercise the degree of care which a person of ordinary care and prudence would use under all the circumstances and conditions to provide appliances, machinery and tools which are reasonably safe.

"If you find from a preponderance of the evidence that the defendant failed to use reasonable care to provide his employee with reasonably safe appliances, machinery and tools with which to work, as herein defined, then such failure would constitute negligence on his part."

See Van Aernam v. Nielsen, 261 Iowa 1115, 1117–1118, 157 N.W.2d 138 (1968).

There was no abuse of discretion by trial court in overruling defendant's objection to the question put to Mr. Wardle calling for his expert opinion.

■ By the same token, defendant's objection, as made, was no more valid as a basis for striking the answer than when lodged against the question. See Harrison v. Ulicki, 193 N.W.2d 533, 537 (Iowa 1972).

V. The question now to be considered is whether the evidence, viewed in a light most favorable to plaintiff, created a jury issue. See Claude v. Weaver Construction Co., 261 Iowa 1225, 1228, 158 N.W.2d 139 (1968).

- Before pursuing the instant subject further we here allude to the fact that, as aforesaid, all machinery was in proper order and plaintiff was aware of some danger attendant upon reaching under the rapidly revolving, partially guarded shaft. But plaintiff's knowledge here relates more to contributory negligence on his part than to defendant's primary negligence. See Adams v. Deur, 173 N.W.2d 100, 113 (Iowa 1969); Hightower v. Edwards, 445 S.W.2d 273, 275–276 (Mo.1969); Prosser, Torts, § 65 at 424 (4th ed. 1971); 2 Restatement, Second, Torts, § 466; 2 Restatement, Second, Agency, § 525; 18 Drake L.Rev. at 160. See also McCormick v. Smith, 459 S.W.2d 272, 275–277 (Mo.1970).

■ And it is presumed the jury, having been properly instructed regarding contributory negligence, accorded due weight to the matters set forth above in determining damages to be assessed. See Iowa R.Civ. P. 97; Abel v. Dodge, 261 Iowa 1, 10, 152 N.W.2d 823 (1967).

So we confine ourselves to defendant's duty to furnish reasonably safe machinery with which to work and a reasonably safe working place. See Frederick v. Goff, 251 Iowa at 295, 100 N.W.2d at 627.

Had plaintiff-employee been called upon to use the provided equipment in its usual manner—scoop or funnel corn into the hopper from which it would normally flow into the power take-off connected elevator —then the machinery would probably have been reasonably safe for that purpose.

■ But the task assigned plaintiff by defendant placed the former in a different position. Defendant's duty must be accordingly viewed. See Mooney v. Nagel, 251 Iowa 1052, 1057–1058, 103 N.W.2d 76 (1960). See also Frederick v. Goff, 251 Iowa at 301–304, 100 N.W.2d at 630–632; 53 Am.Jur.2d, Master and Servant, § 251; Annot., 67 A.L.R.2d 1120, 1183; 18 Drake L.Rev. at 160–161. More specifically the question instantly presented is whether the machinery and place of work provided were reasonably safe *when used as assigned or directed.*

As previously stated plaintiff was instructed to retrieve corn from under a partially exposed and rapidly spinning power take-off shaft. And it is of no consequence that defendant, in so directing plaintiff, did not foresee the extent of harm or manner in which it occurred. See Calkins v. Sandven, 256 Iowa 682, 692–693, 129 N.W.2d 1 (1964).

Reasonable minds could fairly conclude defendant-employer's conduct in furnishing plaintiff-employee inadequately guarded or defective equipment with which to perform the work assigned was a substantial factor in bringing about the latter's injury. Reasonable minds could also find plaintiff's attempt to recover corn on the ground as he did was a normal response to defendant's instructions. In complying therewith plaintiff may have been contributorily negligent, but, as aforesaid, this could only serve to mitigate or reduce the damages allowed.

To hold, as a matter of law, there was no substantive evidential support for submission of this case to a jury would be impermissible under the record before us. In that regard Iowa R.Civ.P. 344(f) (10) provides: "Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law." See also Weisbrod v. State, 193 N.W.2d at 128; Meier v. Phillips, 256 Iowa 757, 759–760, 129 N.W.2d 92 (1964).

It therefore follows, trial court properly overruled defendant's motion for a directed verdict, and judgment entered upon the jury verdict must stand.

Affirmed.

All Justices concur, except McCORMICK, J., who takes no part.