Gary VAN AERNAM, Appellant,

v.

Carl NIELSEN, Appellee.

No. 52794.

Supreme Court of Iowa.

March 5, 1968.

David E. Green and James Furey, Carroll, for appellant.

Taylor & Taylor, Guthrie Center, for appellee.

MASON, Justice.

The accident out of which this law action arose occurred about 5:30 p. m. November 16, 1964, on defendant Carl Nielsen's farm in Audubon County when plaintiff Gary Van Aernam's left hand and leg became caught in the rollers of defendant's mounted corn picking unit. Plaintiff was defendant's employee at the time of his injuries for which he seeks damages.

Plaintiff alleged defendant was negligent in failing to have mud scrapers on the corn picking unit; failing to maintain safe machinery and appliances for plaintiff; failing to furnish plaintiff a safe place to work or safe premises to work on; allowing plaintiff to operate the corn picker when defendant knew the area where he had ordered plaintiff to pick corn was wet, muddy and hazardous and the picking unit was not operating properly; furnishing plaintiff with old, obsolete and dangerous

machinery which was not suitable for picking corn; and failing to advise or warn plaintiff that the contoured field was too wet to pick corn.

By these specifications of negligence plaintiff in effect asserts defendant's conduct constituted a breach of his duty to (1) provide plaintiff with a safe place to work and (2) use reasonable care to provide and maintain for plaintiff reasonably suitable and safe appliances, machinery and tools with which to work.

At the conclusion of plaintiff's evidence to the jury, defendant's motion for a directed verdict on all grounds urged was sustained and plaintiff has appealed from the judgment entered on the verdict.

I. He assigns as error relied upon for reversal (1) sustaining of defendant's motion for directed verdict on the ground that (a) plaintiff failed to show a breach of duty owed by defendant, (b) plaintiff failed to show defendant's conduct was the proximate cause of plaintiff's injury and (c) as a matter of law plaintiff assumed the risk which caused his injuries; and (2) error in ruling on objections to plaintiff's evidence.

II. In Frederick v. Goff, 251 Iowa 290, 295, 100 N.W.2d 624, 627, in referring to the extent of defendant's duty in such cases we said:

"It is a settled rule that an employer must use reasonable care to provide and maintain for his employees reasonably suitable and safe appliances, machinery and tools with which to work." See also Kregel v. Kann, Iowa, 152 N.W.2d 534, 536, and citations, where we said:

"However, the employer is not an insurer of the safety of the tools, machinery or appliances, nor of the safety of the employee in using the instrumentalities furnished but is only liable for negligence [Citing authorities].

"The employer must exercise reasonable care to eliminate dangers which are not the usual or ordinary incidents of the service when he has exercised such care" (Citing authorities).

In determining whether the employer exercised reasonable care there is no absolute standard to which his conduct must conform. The law requires the employer in the performance of his duty to exercise that degree of care which a person of ordinary care and prudence would use under the same or similar circumstances. Although the employer's duty is to exercise reasonable care whether the work is comparatively safe or extremely dangerous, the duty becomes more imperative as the risk increases. Kregel v. Kann, supra, Iowa, 152 N.W.2d at 537–538.

III. With these principles in mind we consider the propriety of defendant's motion for directed verdict, viewing the evidence in the light most favorable to the party against whom the motion was made. Rule 344(f) (2), Rules of Civil Procedure.

The day before the accident it had rained, it was wet and foggy that night and muddy the next morning. The farm lot yards and the field where the accident occurred were wet and muddy. Plaintiff and defendant spent the morning working around the farmyard. After dinner defendant told plaintiff to start picking corn. The area in which he was to pick was on a contoured hillside, mostly clay. Plaintiff started picking corn about 2 p. m. using defendant's two-row corn picker which was about a 1950 model mounted on a later model diesel tractor, although the tractor itself was approximately 10 years old. The tractor did not have wheel cleaners on it. We are told wheel scrapers or mud cleaners are pieces of iron that sit flat between the front wheels, come out, split and go around the front wheels. Their purpose is to scrape the mud off the wheels so they don't slide, enabling you to guide the tractor.

In the fall and winter of 1963 and spring, summer and fall of 1964, plaintiff and de-

fendant discussed the need for mud scrapers.

The front wheels of this model tractor were set closely together. When used in mud without scrapers, these wheels had a tendency to clog and slide, making it difficult to steer, control and operate the unit on the corn rows. The center divider of the picker which hooked on the hubs of the front wheels was off. As a result, mud from the wheels was pushed up against and filled the picker snoots. These were pushed down and had to be cleaned.

As the wheels became clogged, the operator, in an effort to dislodge the mud, would reverse the tractor, back up and then go forward. If not successful, this maneuver had to be repeated. Then if this failed it was necessary for the operator to get off the machine and dig the mud from the front wheels with his hands. Of course, this required him to stop the tractor, get off, walk around the picker, unhook the chain that raised the snoot, pinch two clips if they weren't bound tight and remove the snoot. Otherwise, a flap had to be pulled out and the mud dug from the clips so they could be squeezed together, the snoot removed and the mud pulled out. The operator would then replace the snoots, walk around the machine, put everything in gear and attempt to go forward again for a short time.

The morning of the accident plaintiff and defendant talked about the need for mud scrapers, at dinner they talked about the matter again. Defendant said they were needed. Plaintiff says he got the impression defendant might get mud scrapers after dinner when he took a load of hogs into town. After defendant returned from town, the parties again talked about the need for the scrapers at the midafternoon lunch period. Plaintiff explained to defendant that he had been going backwards and forwards, getting off and cleaning out the mud and getting back on and repeating the same thing over and over all afternoon.

About 4:30 defendant came to the field where plaintiff was picking, mentioned observing the spots where plaintiff had stopped to dig out mud and the areas where the wheels had been sliding. He said if they had mud scrapers, they wouldn't be having the trouble experienced. Defendant, called as plaintiff's witness, testified he recalled plaintiff mentioned three times on the day of the accident the difficulty he was having picking corn.

Plaintiff says from the time he started picking until the accident, he had gotten off the tractor 12–14 times, maybe more, to clean the wheels. Five or six of those times occurred during the hour before the accident.

Plaintiff had had trouble with mud balling up on the front wheels in the spring of 1964.

Defendant had purchased the picker in September or October of 1964 from a neighbor. At the time it was located by the side of the neighbor's driveway and hadn't been used for five or six years. As it was being mounted on the tractor, plaintiff observed some chains, sprockets and bolts were missing. It was badly rusted and described as an old, obsolete unit. The chains that were there were thickly rusted, had to be soaked in oil and kerosene to free them so they would work. It was necessary to weld the picker in several cracked spots, bearings had to be freed and bolts replaced.

After defendant got the picker and started picking corn, they had mechanical troubles almost every day which required making repairs. Defendant bought another picker of the same model from another neighbor's junk pile, taking parts off this picker to repair the mounted picker. Most of the time defendant helped make the repairs.

The shut-off unit which controls the movement of the picking rollers on this model picker was described as the "meanest one there ever was to shut off." As we understand the record, there are two switches on this mounted unit. One, similar to that of an automobile, starts and

stops the diesel engine, the other is a power take-off type for control of the picking rollers. This shut-off lever was homemade by plaintiff and defendant consisting of a rod running from back by the clutch under the steering wheel through a plate to a lever located further forward that hooks on to the belt pulley and operates the power for the picking rollers. Its purpose is to enable the operator to shut off the picking unit separately from the tractor. One witness testified it was not a good practice to turn the diesel engine on and off.

Plaintiff testified he told defendant both at the lunch period and when defendant came to the field about an hour before the accident that he was having trouble with the shut-off lever on the picker. It would stick, bind and hold and wouldn't push off like it should. Plaintiff said defendant did not tell him to quit picking corn.

Immediately before getting caught in the picker, plaintiff was going around the field when the wheels started balling up. He backed up and went ahead but did not free the wheels of mud. He attempted to disengage the rollers but couldn't get the rod pushed through the plate to the shut-off lever. He got off the tractor; walked around to the front, as it was the snoot, not the rollers, that was causing the trouble. He pulled the flap out, being unable to squeeze the clips, and with his left hand took ahold of a handful of mud which was packed tightly with cornstalks and foxtail, gave it a tug, the mud came loose suddenly and his hand went into the picker, jerking off his left arm. After plaintiff had been caught in the picker, he reached up with his right hand where the rod runs from the tractor to the belt pulley, got ahold of a lever which sticks up and pulled it forward to stop the power unit, something he was unable to do from his seat on the tractor.

The substance of defendant's contention seems to be that no liability attaches from any remission of duty on his part because plaintiff's injuries did not stem therefrom but from plaintiff's own conduct in dismounting from the tractor and attempting to clean the mud from between the wheels without shutting off the machinery.

It was, of course, plaintiff's burden to establish that defendant failed to exercise the care imposed upon him. The ground of defendant's liability is not danger but negligence.

■ IV. Our function in review is to examine the evidence to determine, not whether it proves defendant guilty of negligence in failing to exercise reasonable care to provide and maintain for his employee reasonably suitable and safe appliances, machinery and tools with which to work, but whether it makes a sufficient showing so that the trial court would be warranted in submitting the question to the jury and the jury in the exercise of its function as the trier of the facts be justified in finding defendant negligent. Kregel v. Kann, supra, Iowa, 152 N.W.2d at 538, and citations.

■ In his motion for directed verdict defendant asserts the record has no reference to any defective equipment which was the proximate cause of plaintiff's injuries but only a lack of equipment, to wit: mud scrapers. We do not agree with defendant's contention. There is evidence in the record that the shut-off lever for shutting off the corn picker was homemade and would not disengage properly at the time of plaintiff's injuries and would not allow the operator of the tractor to shut off the picker from the tractor seat. We believe this would be material and relevant for a jury to consider in determining whether defendant failed to exercise the care imposed upon him. This contention of plaintiff assumes additional importance in view of defendant's knowledge of the frequency with which plaintiff was required to stop the machine because of the lack of mud scrapers while the unit was being operated in the field described.

There was sufficient evidence to generate a jury question on the issue whether defendant breached a duty owed plaintiff.

■ V. The same conclusion is true as to plaintiff's contention defendant owed him a duty to provide a safe place to work. This is an obligation on the master to furnish the servant with a safe place to work. It is both statutory and by judicial pronouncement. Erickson v. Erickson, 250 Iowa 491, 498, 94 N.W.2d 728, 732. See also section 88.14, Iowa Codes, 1962 and 1966.

In O'Reagan v. Daniels, 241 Iowa 1199, 1205–1206, 44 N.W.2d 666, 669, we said:

"It is a rule of common law and has been the settled rule of this court that the master or employer must use reasonable care and diligence to provide and maintain a reasonably safe place for his employees to work * * *."

The issue should have been submitted to the jury for its determination.

VI. In Frederick v. Goff, 251 Iowa 290, 298–299, 100 N.W.2d 624, 629, in defining proximate cause, we quoted the following from Restatement, Second, Torts, section 431:

"The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

We have repeated this definition in several recent cases.

Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. Rule 344(f) (10), R.C.P. This is not the exceptional case.

Without repeating, we refer to what was said on the subject of proximate cause in Frederick v. Goff, supra, 251 Iowa commencing at 297, 100 N.W.2d commencing at 628.

■ VII. Assumption of risk is an affirmative defense and the burden to prove it rested upon defendant. We do not believe assumption of risk appears as a matter of law. It is seldom a party who has the burden on such issue establishes it as a matter of law. The issue should have been submitted to the jury. Frederick v. Goff, supra.

■ VIII. In view of the necessity of a new trial in this matter we call attention to the court's ruling on the hypothetical question asked Clarence Van Aernam. Counsel who objects to a hypothetical question should advise the court in what respect it fails to state the record properly and may not rely upon a general objection. Kunzman v. Cherokee Silo Co., 253 Iowa 885, 893, 114 N.W.2d 534, 539, 95 A.L.R. 2d 673; Crozier v. Lenox Mutual Ins. Assn., 252 Iowa 1176, 1183, 110 N.W.2d 403, 407.

The trial court in sustaining defendant's motion for directed verdict put great reliance upon Wagner v. Larson, 257 Iowa 1202, 136 N.W.2d 312. We believe the court misinterpreted our holding in that case. A defect in design of farm implements was there involved. Here the issue was whether defendant exercised reasonable care to provide and maintain for his employee reasonably suitable and safe appliances with which to work. In view of this distinction Wagner v. Larson is not in point.

IX. With directions to the trial court to set aside the judgment entered on the directed verdict and grant plaintiff a new trial, the case is

Reversed and remanded.

All Justices concur.