**Loren DOBSON, Appellant,**

v.

**Russom JEWELL and Walter Schumacher, Appellees.**

**No. 54526.**

Supreme Court of Iowa.

Sept. 9, 1971.

**550**

James Furey, Carroll, for appellant.

G. Robert Sackett, of Willis & Sackett, Perry, and Gerald W. Magee, of Cudahy & Wilcox, Jefferson, for appellees.

MASON, Justice.

This is a negligence case for injuries sustained in a farm accident. Loren Dobson brought a law action against Russom Jewell, a farm owner, and Walter Schumacher, her tenant, on the theory defendants were negligent in failing to provide Dobson with a safe place to work. The case was tried to a jury. At the close of plaintiff's case a verdict was directed in favor of defendant Schumacher; the case then continued against defendant Jewell and the jury returned a plaintiff's verdict for $5000. Jewell moved for judgment notwithstanding the verdict and in alternative, for new trial. Her motion for judgment notwithstanding was sustained.

Plaintiff is appealing from the court's rulings directing a verdict in favor of Schumacher and granting Jewell judgment notwithstanding the verdict.

 Our review is on errors assigned. Rule 334, Rules of Civil Procedure. In considering the sufficiency of the evidence of defendants' negligence as against the motions for directed verdict and judgment notwithstanding the verdict, we view the evidence in the light most favorable to plaintiff. This is the effect of rule 344(f), par. 2, R.C.P. Ling v. Hosts Incorporated, 164 N.W.2d 123, 124 (Iowa 1969). It is likewise viewed when appeal is taken from judgment on verdict for plaintiff. We need consider only the evidence favorable to plaintiff whether or not it is contradicted. Miller v. Young, 168 N.W.2d 45, 51 (Iowa 1969).

Mrs. Jewell owned a farm near Coon Rapids in Greene County on which she had lived a number of years. In the fall of 1966 Mrs. Jewell decided to move to Perry. She had cattle on the farm and was interested in making arrangements with someone to look after them after she moved. She was also interested in finding a tenant to live on and operate the farm and talked to Dobson to inquire if he knew a person who would make a good tenant. That fall Mrs. Jewell rented the farm to defendant Schumacher for 1967.

The same fall Mrs. Jewell also made an oral agreement with Dobson, who in past years had done some carpenter work in repairing farm buildings for her, to look after her cattle. Dobson had worked with livestock most of his life. For a number of years before the accident he had bought and sold cattle and in the fall of 1966 had helped sort cattle on the Jewell farm and get them ready for sale.

Under the agreement it was the tenant's responsibility to plan the crops and feed all the livestock. Dobson was to be paid $200 a year for his duties which he described to "just sort of keep an eye on things and report to" her after she moved. In the event he did any physical labor for Mrs. Jewell he was to receive additional pay.

The cattle on the Jewell farm in 1967 were not owned by Mrs. Jewell and Schumacher as partners. Each owned definite animals. About a week before the accident which gave rise to this lawsuit, Dobson talked with Schumacher about vaccinating and castrating the calves which were to be held over. Mrs. Jewell had about 20 and Dobson, 10 or 11. Arrangements were made with a veterinarian who fixed November 7 as the date to do the necessary work.

On the appointed day Dobson arrived at the Jewell farm about 2 p. m. Two veterinarians arrived at the same time bringing their own chute. Schumacher and another man were also there to help.

There were no permanent pens on the Jewell farm to be used for this type of work. So Schumacher and Dobson carried what plaintiff described as a practically new steel farm gate with woven wire from the barn to make a temporary pen in one

corner of the hog house. The veterinary chute was placed at the door in the east end of this building. The gate was fastened at one end with a log chain to the chute and swung around to make a triangular pen in the corner of the building. After the calves were herded into the hog house, four to six at a time were driven into this pen. From the pen one at a time was put in the chute and let into the open yard after the veterinary work was completed.

Schumacher was stationed inside the pen to push the calves into the chute. Plaintiff stood outside to hold the gate and prevent escape of any calves from the pen into the larger area of the hog house.

This process was repeated until all but two animals had been vaccinated and castrated. As one animal was in the chute, the remaining animal in the pen "got excited, went wild, jumped up, and stuck its front feet through the gate," hit Dobson, knocked him down and came over the top landing on him. Dobson suffered a broken hip.

Dobson testified they had used the same arrangement before and it worked satisfactorily. Neither Mrs. Jewell nor Schumacher suggested any different arrangement for penning and separating the calves. Mrs. Jewell had made no inspection the day of the injury of the facilities for sorting and handling the calves for vaccination. About two weeks before Dobson had mentioned to her they were going to vaccinate.

Plaintiff said no one asked him directly to come out and help with the job. He just felt that he would come and help with the work that had to be done. Dobson had seen the gate before when visiting the Jewell farm and hadn't noticed anything wrong with it. On cross-examination Dobson was asked when he first noticed that the gate or anything else was unsafe. He answered, "I didn't."

With the exception of plaintiff's testimony bearing on the nature and extent of his injuries and pain he experienced therefrom, the foregoing is a fair summary of all evidence, viewed in the light most favorable to plaintiff, upon which he bases his claim for damages.

Originally, plaintiff had alleged defendants were negligent in failing to provide him with a safe place to work. This was expanded by amendment before trial by alleging defendants were negligent in failing to provide facilities which would have permitted plaintiff to safely assist in sorting and treatment of livestock on the premises.

At the conclusion of his evidence, plaintiff moved the court for leave to amend to conform to proof. He proposed to add seven paragraphs to the petition and, of course, some paragraphs were divided into subparagraphs.

In his amendment to conform to proof, plaintiff was granted leave to amend by alleging Jewell was negligent in failing (a) to provide plaintiff a safe place to work as required by section 88.14, The Code and (b) to provide a safe place for plaintiff who was her employee at the time to work. Erickson v. Erickson, 250 Iowa 491, 498, 94 N.W.2d 728, 732.

Plaintiff also proposed in his amendment to allege plaintiff was employed by Walter Schumacher for the purpose of assisting with the handling, vaccinating and castrating of calves owned by him on November 7, 1967 and that Schumacher was the agent or servant of Mrs. Jewell assisting with the handling, vaccination and castration of calves.

The application to amend in this respect was denied.

The court in ruling on plaintiff's motion to amend disposed of the motion by separately sustaining or denying each proposed paragraph. Rule 118, R.C.P.

Although no complaint is made on appeal as to these rulings, we make reference

to them in order to set the stage for consideration of plaintiff's theory of recovery.

The relationship of master and servant as between plaintiff and Jewell is admitted in the pleadings.

Plaintiff, by the grounds of negligence alleged, in effect asserts defendants' conduct constituted a breach of their duties (1) to provide plaintiff with a safe place to work and (2) to use reasonable care to provide and maintain for plaintiff reasonably suitable and safe appliances, facilities and tools with which to work. Van Aernam v. Nielsen, 261 Iowa 1115, 1117, 157 N.W.2d 138, 140.

█ There is an obligation on the master or employer to use reasonable care and diligence to provide and maintain a reasonably safe place for his employees to work. It is both statutory and by judicial pronouncement. Van Aernam v. Nielsen, 261 Iowa at 1122, 157 N.W.2d at 143 and authorities cited.

Speaking of the duty of the master or employer to furnish his employee reasonably safe instrumentalities with which to work, we said in Kregel v. Kann, 260 Iowa 1330, 1333–1335, 152 N.W.2d 534, 536–537:

" 'It is a settled rule that an employer must use reasonable care to provide and maintain for his employees reasonably suitable and safe appliances, machinery and tools with which to work.' * * * [citing authorities]

"However, the employer is not an insurer of the safety of the tools, machinery or appliances, nor of the safety of the employee in using the instrumentalities furnished but is only liable for negligence. * * * [citing authorities]

"The employer must exercise reasonable care to eliminate dangers which are not the usual or ordinary incidents of the service when he has exercised such care. * * * [citing authorities]

" * * *.

"In determining whether the employer exercised reasonable care there is no absolute standard to which his conduct must conform. Although the employer's duty is to exercise reasonable care whether the work is comparatively safe or extremely dangerous, the duty becomes more imperative as the risk increases. * * * [citing authorities]

"While the duty of the employer to provide his employee with reasonably safe tools with which to work is owed alike to the young and old, skilled and unskilled, whether the employer has performed such duty depends in some degree on the experience, maturity, intelligence, and discretion of the employee. * * * [citing authorities]."

It was plaintiff's duty to establish that defendants failed to exercise the care imposed upon them.

█ Stated in other words, where recovery is sought on the ground of failure of the master or employer to provide employees a safe place in which to work or safe appliances with which to do their work, the burden is upon plaintiff to establish that the place of work or instrumentalities were unsafe or defective because of the employer's failure to exercise the duty imposed upon him and such failure was the legal cause of harm to plaintiff. 53 Am. Jur.2d, Master and Servant, section 373. See also Restatement, Second, Torts, section 431. We have repeated the Restatement's definition of proximate cause frequently. See Frederick v. Goff, 251 Iowa 290, 298–299, 100 N.W.2d 624, 629; Sayre v. Andrews, 259 Iowa 930, 942, 146 N.W. 2d 336, 344; Andrews v. Struble, 178 N. W.2d 391, 398 (Iowa 1970).

Schumacher by his motion for directed verdict made at the close of plaintiff's evidence and Jewell's motion for directed verdict made at the close of all evidence and asserted again in her motion for judgment

notwithstanding the verdict questioned the sufficiency of the evidence to generate a jury issue as to their negligence proximately causing Dobson's injuries. The trial court in both instances resolved the question against plaintiff.

In seeking reversal plaintiff contends the court erred in, (1) sustaining Jewell's motion for judgment notwithstanding the verdict and (2) sustaining Schumacher's motion for a directed verdict.

We consider plaintiff's assignments in reverse order.

I. Plaintiff argues in support of his assignment based on the sustaining of Schumacher's motion for directed verdict that the term "employee" is to be broadly defined in actions where one seeks damages for personal injuries arising from an alleged master-servant relationship; whether a person was an employee of one against whom he seeks damages for personal injuries is a jury question.

In response, Schumacher points to his motion wherein he asserted there was no pleading or evidence of the existence of an employer-employee relationship between Schumacher and him at any material time; hence, no duty existed on his part to provide plaintiff with a safe place to work; and plaintiff had failed to establish Schumacher was negligent in any of the particulars alleged.

■ We have repeatedly said it is the trial court's duty to submit to the jury all issues presented by the pleadings upon which there is evidence tending to support them. Campbell v. Martin, 257 Iowa 1247, 1251, 136 N.W.2d 508, 511 and authorities cited.

■ However, before the court is justified in giving a broad definition of "employee" in an instruction and submitting the issue of employer-employee relationship to a jury, there must be some pleading alleging such relationship and evidence in support thereof since it is reversible error

to submit to a jury a charge on an issue having no support in the record. Bradt v. Grell Construction, Inc., 161 N.W.2d 336, 340 (Iowa 1968) and authorities cited.

In this connection we said in Walker v. Sedrel, 260 Iowa 625, 632–633, 149 N.W.2d 874, 878:

" * * * There is, of course, no duty to instruct upon an issue without substantial support in evidence or which rests only on speculation or conjecture. Indeed, it is error to do so. * * * [citing authorities]

"A mere scintilla of evidence is insufficient. * * * [citing authorities]

"It is equally clear it is error not to submit to the jury a pleaded issue which has substantial support in the evidence. * * * [citing authorities]."

Plaintiff's theory of recovery urged against Schumacher on appeal is based on the existence of an employer-employee relationship between him and Schumacher, but he did not plead existence of such relationship. He did plead that at the time of the accident he was carrying out his duties as a farm manager for Jewell and Schumacher was a tenant on the farm. Both allegations were admitted by Schumacher. As stated, the court denied plaintiff's motion for leave to amend to conform to proof in which Dobson proposed to allege he was employed by Schumacher for the purpose of assisting with the handling of Schumacher's calves.

■ Even if we were to concede, which we don't, any error in the court's refusal to grant leave to amend in this respect inheres in the present assignment, plaintiff still would not be helped since there is no evidence to support such issue.

In Bengford v. Carlem Corporation, 156 N.W.2d 855, 863 (Iowa 1968), which cites many of our previous cases dealing with alleged employer-employee relationships, we held the evidence was insufficient to create a jury question on the issue of ex-

istence of an employer-employee relationship and defendant's motion for directed verdict on this ground should have been sustained.

The following appears in the portion of the opinion where tests for existence of the relationship are considered:

"An employee or servant is a person bound by duty of service, subject to the master's or employer's command as to the manner in which the work shall be done. * * * [citing authorities]

" * * * [citing authorities] 'The relationship of master and servant does not exist, unless there be the right to exercise control over methods and details,—to direct how the result is to be obtained. The power to direct must go beyond telling what is to be done,—to telling "how it is to be done." '

"The right of control is the principal test for determining whether an employer and employee relationship exists. * * * [citing authorities]

" * * * [citing authorities] [W]e say the employer's responsibility for the payment of wages to a claimant is one of the necessary elements to be considered in determining the question of an employer-employee relationship."

■ Bearing in mind these tests and taking the evidence which we have detailed in the most favorable light available to plaintiff, we hold plaintiff failed as a matter of law to generate a jury question on the existence of an employer-employee relationship between himself and Schumacher.

He does not contend in this court that he declared on any other theory of recovery against Schumacher.

■ We also conclude plaintiff's allegations as to Schumacher's alleged negligence are not supported by substantial evidence.

The court did not err in directing a verdict for Schumacher.

■ II. In his first brief point under the assignment challenging the court's sustaining of Jewell's motion for judgment notwithstanding, plaintiff maintains the trial court should have ruled separately on each ground thereof rather than sustaining the motion generally.

Plaintiff argues the court's failure in this respect requires him to speculate as to which ground of Jewell's motion the trial court found persuasive. He maintains this is particularly true in view of the general indistinct nature of the grounds asserted.

It is true the trial court sustained Jewell's motion without ruling separately on the grounds asserted.

Plaintiff refers to rule 118, R.C.P., which we set out:

"A motion, or other matter involving separate grounds or parts, shall be disposed of by separate ruling on each and not sustained generally."

This is a portion of the Advisory Committee's comment following the rule: " * * * Both the appellate court and the parties should be entitled to know what grounds are upheld, thus shortening the later phases of the matter. No one is harmed by this."

Trial courts would be well-advised to follow the rule even though we have not, as yet, reversed any case for noncompliance.

Jewell asserted in the motion she had moved for a directed verdict at the close of plaintiff's evidence and again at the close of all evidence; the motion was overruled and the jury did not return such a verdict. She further alleged she was entitled to judgment notwithstanding the same as though the court directed a verdict at the time for the reasons alleged in her motion. She then re-alleged four of the grounds asserted in her motions for directed verdict.

Rule 243(b), R.C.P., provides:

"(b) If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant."

■ The purpose of the rule is to give the trial court an opportunity to correct its error in failing to sustain a motion for directed verdict. Friedman v. Colonial Oil Co., 236 Iowa 140, 145, 18 N.W.2d 196, 199.

The trial court, after indicating it had serious reservations about its ruling on Jewell's motion for directed verdict, then quoted extensively in question and answer form from the direct examination of Dobson.

After some discussion the court said, " * * * It is the view of the court, however, that the admissions of the plaintiff quoted above, and in the light of the long established rules of law on the subject, preclude his recovery herein."

The trial court's failure to comply with the rule does not constitute prejudicial error requiring reversal.

III. We continue consideration of plaintiff's first assignment.

The employer-employee relationship between Jewell and Dobson is not in issue. By virtue of this relationship Jewell had the duty under the authorities cited, supra, to exercise reasonable care and diligence to provide Dobson a reasonably safe place in which to work and reasonably suitable and safe appliances, facilities and tools with which to do his work. It was Dobson's burden to establish that the place to work was unsafe or the instrumentalities furnished were defective because of Jewell's failure to exercise the duty imposed upon her and that breach of this duty was a proximate cause of his injuries.

Jewell, in motion for directed verdict and again in motion for judgment notwithstanding, questioned the sufficiency of the evidence to generate a jury question, (1) as to her failure to perform the imposed duty and (2) as to any alleged negligence on her part proximately causing plaintiff's injuries.

Jewell had alleged in these motions that plaintiff failed, (1) to prove the cause of action plead in his petition as amended, (2) to prove she had failed to furnish and provide a safe place to work and (3) to establish any alleged negligence on her part was the proximate cause of Dobson's alleged injuries.

■ Our function in review is to examine the evidence to determine, not whether it proves Jewell was negligent in failing to exercise reasonable care to provide Dobson a reasonably safe place in which to work and provide and maintain reasonably suitable and safe tools with which to do his work, but whether it makes a sufficient showing so that the trial court would be warranted in submitting the question to the jury and the jury in the exercise of its function as trier of the facts be justified in finding Jewell negligent. Kregel v. Kann, 152 N.W.2d at 538; Van Aernam v. Nielsen, 157 N.W.2d at 142.

We will treat Jewell's allegation that plaintiff failed to prove the cause of action plead in his amended petition as comprehending the other two grounds set out, supra. Plaintiff had originally alleged Jewell was negligent in failing to provide a safe place to work and in amendment alleged she was negligent in failing to provide facilities which would have permitted him to safely assist in sorting and treatment of cattle. We have considered the allegation in the amendment as an assertion by plaintiff that Jewell failed to furnish reasonably safe and suitable tools for vaccinating and castrating calves. In this he failed.

No hidden or latent defect in either the place to work or the facilities furnished Dobson with which to work is involved.

The pen arrangement used November 7 was reasonably suited for the work to be done. As stated, Dobson testified "we have used the same arrangement before and it worked satisfactorily." As pointed out in the trial court's ruling, Dobson was asked on direct examination, "And, now, there at two o'clock on that afternoon with everybody prepared to start work, did you yourself know of any other arrangement that could be made, any other materials that could have been utilized or any pens set up in any other way than they were set up that might have been safer than the arrangement that was actually employed?" and he answered, "No." When asked when he first noticed the gate or anything else was unsafe, he replied, "I didn't."

These are "the admission of plaintiff" referred to in the court's ruling mentioned earlier.

Dobson by his own testimony admitted the gate was not defective and the place to work was not unsafe. There was no evidence otherwise. So far as the record reveals, Dobson was the only witness offered to establish plaintiff's cause of action.

■ We are aware that generally questions of negligence and proximate cause are for the jury and it is only in exceptional cases that they may be decided on as matters of law. Rule 344(f) (10), R.C.P.

The evidence bearing on Jewell's alleged negligence in failing to exercise the duty imposed upon her by reason of the employer-employee relationship does not present a factual situation where reasonable minds might reach different conclusions or draw different inferences. See Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 642 (Iowa 1969).

■ There is not a scintilla from which a jury in the exercise of its function as trier of the facts could justifiably find the gate was defective or the pen was an unsafe place to work or Jewell was negligent in failing to exercise reasonable care to provide safe working conditions for her employee. It thus became a question of law for the court.

■ The ground of defendant's liability is not danger, but negligence. Knudtson v. Swenson, 261 Iowa 929, 947, 155 N.W.2d 756, 769. The cited case analyzes many of our farm accident cases.

We are convinced plaintiff did not establish the cause of action plead. The trial court reached the right result in granting Jewell judgment notwithstanding.

We have considered all of plaintiff's contentions urged in support of this assignment whether specifically referred to or not in this opinion. They are not helpful to his challenge of the court's ruling.

The case is therefore

Affirmed.

All Justices concur except REYNOLDSON, J., who concurs specially in which BECKER, J., joins.

REYNOLDSON, Justice (concurring specially).

I reach the same result as my brothers, but by different reasoning.

As stated in the majority opinion, defendant Jewell was obligated to provide plaintiff with a safe place to work and suitable and safe appliances, facilities and tools.

Plaintiff in this case amended to allege defendant was negligent in failing to pro-

vide a permanent pen for sorting and treating livestock or other facilities which would have permitted the plaintiff to safely assist in the sorting and treating of the livestock on the premises. He then failed to introduce any evidence to show how permanent-type facilities would have prevented the type of injury he sustained or that the temporary arrangement used was not a suitable and safe appliance. This type of proof cannot be supplied by judicial notice. I doubt it is common knowledge permanently structured handling and sorting pens are superior to the jerry-built substitute plaintiff was required to employ.

The majority opinion places too much emphasis on plaintiff's alleged admission there was nothing wrong with the gate and nothing wrong with the hog house. Ignored is the point it became necessary for plaintiff to use these for a purpose for which they were not designed. Likewise, I find nothing damaging to plaintiff's' case in his concession that at the time the calves and operating personnel were all assembled, no other arrangement could be made. This is only to say that in the absence of permanent handling facilities, plaintiff had to improvise. He did not necessarily assume the risk, § 88.14 Code, 1971. See also Van Aernam v. Nielsen, 261 Iowa 1115, 157 N.W.2d 138 (1968); Knudtson v. Swenson, 261 Iowa 929, 951, 155 N.W.2d 756, 771 (1968) (dissenting opinion); Blackburn, The Duty Concept in Farm Accidents in Iowa, 18 Drake L.Rev. 155, 158 (1969).

However, we are still confronted with plaintiff's failure to make the necessary record. This being so, I join the judgment of the court.

BECKER, J., joins in this special concurrence.