**Robert L. HARPER, Appellant,**

v.

**The CEDAR RAPIDS TELEVISION
COMPANY, INC., a corporation,
Appellee.**

No. 56987.

Supreme Court of Iowa.

Aug. 30, 1976.

Eugene J. Kopecky, of Ackley & Kopecky, Cedar Rapids, for appellant.

Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

This appeal by plaintiff, Robert L. Harper, is from the judgment entered in a law action tried to the court. Harper, an employee of The Cedar Rapids Television Company, Inc., a corporation, filed a petition in two divisions against that company as defendant claiming damages by reason of termination of his employment by defendant on September 19, 1972. The trial court found the contract of employment at the time of plaintiff's discharge "was one of indefinite duration and terminable at will" and dismissed plaintiff's petition.

Following an interview, audition and negotiations the parties had entered into a written employment contract sometime in April 1970 covering plaintiff's employment as an anchor-man for the local news program of station KCRG in Cedar Rapids which was owned and operated by defendant. The terms of this contract were to become effective April 13, 1970, and terminate April 12, 1972.

Plaintiff's claim for relief is based on the theory the written contract of employment referred to was orally modified and extended from April 13, 1972, to April 12, 1973, and was in existence at the time of plaintiff's discharge. Plaintiff alleged that following an altercation with another employ-

ee of defendant on September 19, 1972, plaintiff was discharged without cause. The vital distinction between the causes of action set forth in the two divisions of the petition is the amount and elements of damages claimed.

Defendant in answer admitted existence of a written agreement of employment but originally asserted this contract was mutually rescinded and terminated in January 1972, and that thereafter plaintiff was an employee of defendant under an oral employment contract which was terminable at will by either party. In an amendment to its answer defendant struck the phrase "was mutually rescinded and terminated in January 1972," and substituted the phrase "expired on April 12, 1972."

Plaintiff's basic contention on appeal is that the trial court erred. in finding there had been no renewal of the employment contract. This court is requested to reverse the trial court and find that a contract did exist on the date of the alleged breach and the terms thereof were those of the written agreement entered into by the parties which was allegedly renewed by the parties. Plaintiff further requests this court to award him damages commensurate with the terms of said agreement and requests remand for a determination of further damages.

As stated, plaintiff was hired by defendant, owner and operator of television station KCRG in Cedar Rapids, as an anchorman for the local news programs. Plaintiff responded to an ad placed in a broadcasting magazine by defendant and after negotiations the parties entered into a written employment contract. It is uncontradicted the written agreement was executed at the insistence of plaintiff and was contrary to the usual practice of defendant.

The following provisions of the employment agreement are most pertinent to the issues presented by the appeal:

"  *    *    *

"*Compensation*

"For all services rendered by you under this agreement, the Company will pay you a salary of eighteen thousand dollars ($18,-000) per annum through April 12, 1971. And a salary of eighteen thousand five hundred dollars ($18,500) beginning April 13, 1971, to the termination of this agreement on April 12, 1972.

"  *    *    *

"*Terms of Employment*

"It is understood that the Company may terminate your services at any time during the term of this agreement by serving you thirteen weeks notice or paying you thirteen weeks base salary in lieu thereof, for the following reasons:

"1. Breach of this agreement by you.

"2. Commission by you of any act or involvement in any situation which will bring you into public disrepute or reflect unfavorably upon the reputation of KCRG.

"*Agreement Not to Compete*

"When the services with this Company are terminated either by breach or expiration of agreement, you further agree that you will not accept employment with any other broadcast facility in the Cedar Rapids-Waterloo market area for a period of twenty-six (26) weeks. Or, for any period of up to one (1) year that the Company chooses to pay you, based on the salary agreement in force under this agreement."

During the term of the employment agreement defendant provided plaintiff with various increases in compensation which were not provided for in the agreement. These salary increases appear to have been rewards for plaintiff's role in greatly increasing the ratings of defendant's local news programs. At the same time, however, it appears plaintiff was involved in a number of clashes with various other employees of defendant. Mr. Edwin Lasko, general manager of the KCRG station, testified there were "fairly frequent" personnel difficulties involving plaintiff. These difficulties led to plaintiff's submittal of a letter of resignation to Lasko in December 1971. It is not clear whether plaintiff subsequently withdrew the letter or defendant did not accept it, but in any event, no action was taken on it.

Lasko further testified that after plaintiff withdrew his letter of resignation plaintiff said "he would be then finished in April." Shortly thereafter, Lasko, after consultation with the executive committee of the station, decided plaintiff's written contract would not be renewed. At no time was this decision communicated to plaintiff. Plaintiff denied ever having indicated he would leave defendant's employ after expiration of the written agreement, unless "we couldn't come to contractual agreement."

Plaintiff testified he "had a meeting with Mr. Lasko in February [1972] about renegotiation." They discussed changes in plaintiff's duties, a change of title and a salary increase. As a result of this meeting plaintiff received a $2500 per annum raise in salary which was to start with the expiration of the contract, but which actually became effective March 1, 1972.

Lasko's testimony concerning the February meeting differed from plaintiff's. He testified plaintiff "came in and asked for a raise." To the best of Lasko's knowledge the conversations he had with plaintiff at that time "concerned only money." He further testified his company did not "believe in written employment contracts," and no employee outside of the sales department had a contract at that time. However, he, like plaintiff, had had a two-year contract when he first came to work for defendant.

Although the contractual relationship between the parties terminated on April 12, 1972, their employer-employee relationship did not and proceeded according to the terms of the now expired written contract as modified by the salary increases. Plaintiff testified he approached Lasko sometime after April 12 and inquired about another copy of the contract to which Lasko responded, "Well, I'm not worried about that." Plaintiff then asked if he was "worried about my going off to another competitive station" and Lasko responded, "No, I'm not worried." Plaintiff concluded the conversation with "Neither am I."

Lasko concurred in plaintiff's recollection of the conversation and explained he was not worried about the noncompetition clause because he was willing to forego it in exchange for the freedom to terminate plaintiff when it was deemed necessary. According to Lasko the employment arrangement between the parties subsequent to the expiration of the written agreement was simply that plaintiff was working for defendant "for $21,500 a year producing and doing the news" without a written contractual agreement.

On September 19, 1972, plaintiff was involved in an altercation in the KCRG studios with Walter Alliss, chief engineer for KCRG radio and television. It is undisputed plaintiff struck the first blow in the scuffle which plaintiff testified was precipitated by words between the two men concerning what plaintiff felt were unjustified complaints about the previous evening's taped news program. Following the scuffle, which resulted in Mr. Alliss' face requiring 24 stitches, plaintiff left the station allegedly to change clothes. Within 45 minutes Lasko telephoned plaintiff at his home and informed him he was fired.

On the date of trial, immediately prior to the presentation of evidence, defendant requested the court's permission to file the amendment to the answer previously mentioned "which pretty much simply conforms to what I think the proof will be as far as the evidence is concerned * * *." Plaintiff objected to that portion of the amendment, set out earlier, on the ground "it changes the defense in this case from that of rescission to that of expiration and that is a primary matter in this case * * *." As to the contested portion of the amendment the court stated, " * * * I am not making any ruling at this point on that matter and as to what the proof would be under the pleadings without amending them." The court at no time made a final ruling on this portion of the proposed amendment, nor was there a subsequent request by either party for the court to do so.

This appeal presents the following issues for review:

1. Did trial court's failure to rule on defendant's request to amend his answer

result in prejudice to plaintiff and thus constitute reversible error?

2. Was the trial court's finding that there had been no renewal of the expired written agreement supported by substantial evidence in the record?

3. Was the law erroneously applied to the facts in the finding the contract was not renewed?

4. Did the trial court's denial of damages to plaintiff constitute error?

5. Even if the contract had been renewed, was defendant's summary dismissal of plaintiff justified? (Raised by defendant).

I. Plaintiff contends the trial court erred in not denying defendant's requested amendment to the answer, in not ruling on said amendment and in adopting same in the court's finding of facts, conclusions of law and judgment.

Rule 88, Rules of Civil Procedure, provides in part:

"Any pleading may be amended before a pleading has been filed responding to it. The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense. * * *."

Defendant's proposed amendment, although presented before trial, was presented as an amendment to conform to the proof and was treated as such by the trial court. Plaintiff contends the trial court's holding of the ruling "in abeyance" violates rule 88, R.C.P.

Defendant argues: (1) there was no request for or ruling upon the motion or indication the court granted it and thus there is nothing for this court to review; (2) even if the amendment had inferentially been allowed, it would have constituted error in any event to deny it, since it did not substantially change the defense or surprise plaintiff; (3) no prejudice is shown to have occurred; (4) the issue of expiration in any event was tried by consent.

As noted, the trial court never formally ruled on defendant's motion to amend. The court appears to have decided to delay ruling on the amendment to conform to proof until the proof was presented. Neither party requested a ruling and it is impossible to definitely glean from the trial court's findings of fact and conclusions of law whether the amendment was "inferentially" granted.

Plaintiff in effect argues there is something for this court to review when the trial court reserves and thereafter never makes a ruling on a motion to amend.

■ A motion never decided or ruled on in the trial court presents nothing for review in the appellate court. Where a ruling on a motion or objection is reserved by the court, the moving or objecting party must subsequently obtain a direct ruling in order to preserve the matter for appellate review. The burden of demanding a ruling rests upon the one desiring it. *In Re Estate of Coleman*, 238 Iowa 768, 770, 28 N.W.2d 500, 502. If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon. See in support *Griffith v. Red Oak Community School District*, 167 N.W.2d 166, 172 (Iowa 1969); *State v. Badgett*, 167 N.W.2d 680, 687 (Iowa 1969); and authorities cited in these opinions; 4 C.J.S. Appeal and Error § 321e, p. 1026 and § 322, p. 1028.

■ In light of the foregoing authorities plaintiff's contentions the trial court erred, (1) in not denying defendant's requested amendment to the answer and (2) in not ruling on the proposed amendment, present nothing for review.

With the conclusion the amendment's propriety is not before this court, it does not necessarily follow that the subject matter of the amendment is not a part of the record presented for review. "Permitting the introduction of evidence on an issue not specifically pleaded obviates the necessity of its formal presentation. Where, as here, parties proceed without objection to try an issue, even though not presented by the

pleadings, it amounts to consent to try such issue and it is rightfully in the case. * * [citing authorities]." *In Re Estate of Millers,* 159 N.W.2d 441, 446 (Iowa 1968). See also *Holland v. Holland,* 161 N.W.2d 744, 746 (Iowa 1968); *Peters v. Peters,* 214 N.W.2d 151, 155 (Iowa 1974); and *Arthur Elevator Co. v. Grove,* 236 N.W.2d 383, 391 (Iowa 1975).

On numerous occasions testimony was introduced at trial concerning the expiration of the written employment contract. At no time did plaintiff object to this testimony on the ground it was irrelevant to any issue presented by the pleadings. In fact, plaintiff introduced much of the evidence relating to the expiration date of the written agreement.

Even though the issue of the propriety of the amendment is not before this court, the subject matter of the proposed amendment was tried by the consent of the parties and was "rightfully in the case." Therefore, defendant's denial that plaintiff was an employee "pursuant to the terms of a written agreement" could be supported by evidence of a mutual rescission and termination of the agreement in January 1972 as alleged in defendant's answer or by evidence introduced at trial and not objected to by plaintiff that the written agreement expired on April 12, 1972.

Defendant's third contention considered in this division is without merit.

II. Plaintiff next attacks the sufficiency of the evidence to support the finding the employment contract was of indefinite duration terminable at will. This conclusion of the court of course necessarily entailed the finding the 1970–1972 written contract had not been renewed.

In this connection we point out that under the express terms of the initial written contract of employment it expired April 12, 1972. Hence, in order for plaintiff to obtain relief under the theory declared upon in both divisions of his petition it was essential he establish by a preponderance of the evidence the parties had manifest a mutual assent to extend this initial contract of employment beyond its written expiration date. Plaintiff had the burden of persuasion on this question.

On plaintiff's appeal from an adverse judgment rendered in a law action tried to the court our review is not de novo but on errors assigned. Rule 334, R.C.P. In order to prevail on this issue under this limited extent of review it would be necessary for this court to hold plaintiff had established his theory in the trial court as a matter of law. *Arthur Elevator Co. v. Grove,* 236 N.W.2d at 388.

In the absence of an admission by the adverse party it is seldom that a party having the burden of proof upon an issue establishes it as a matter of law. *Van Aernam v. Nielsen,* 261 Iowa 1115, 1123, 157 N.W.2d 138, 143.

To sustain plaintiff's position in light of the foregoing principles of law the evidence bearing on the question whether the parties manifest an assent to a renewal of the employment contract must be so overwhelming that but one reasonable inference or conclusion could be drawn from the proof adduced. Plaintiff's position might also be sustained if there is a lack of substantial evidence in the record to overcome a prima facie case. In support see *Kern v. Kiefer,* 204 Iowa 490, 491, 215 N.W. 607, 608; *Baker v. General Am. L. Ins. Co.,* 222 Iowa 184, 188–189, 268 N.W. 556, 558; *Roth v. Headlee,* 238 Iowa 1340, 1343, 29 N.W.2d 923, 924–925; *Krimlofski v. United States,* N.D.Iowa C.D., 190 F.Supp. 734, 747–748; and authorities cited in these opinions.

In determining whether plaintiff was entitled to judgment as a matter of law defendant is entitled to have the evidence and the inferences to be drawn therefrom viewed in the light most favorable to it. *Luddington v. Moore,* 261 Iowa 641, 646, 155 N.W.2d 428, 432.

In support of his argument plaintiff asserts the following "uncontradicted" facts: (1) his refusal to work without a contract; (2) his experience and knowledge of the broadcasting business; (3) the previous

two-year written agreement and "the references to said contract and changes by defendant made after April 13, 1970 and before September 19, 1972"; (4) the close friendship between plaintiff and Lasko; (5) "oral agreement between plaintiff and general manager of defendant station in regard to a new contract with pay at the rate of $21,500.00 per annum"; (6) wages were for a certain amount per year; (7) plaintiff's duties before and after April 12, 1972, were the same; (8) both parties were mutually obligated—plaintiff's covenant not to compete and defendant's agreement to pay for services rendered; (9) employment was terminated without notice after consultation with defendant's attorney; (10) plaintiff had problems with defendant's personnel; (11) defendant's intention not to renew was not communicated to plaintiff.

In response defendant asserts the evidence is overwhelming renewal was not intended by either party, citing the previously noted conversation between plaintiff and Lasko sometime after April 12, 1972, concerning the competition clause. Defendant also points to the facts plaintiff was "riding high" on his popularity and thus had no fear of acquiring other employment, had earlier tendered his resignation, was "a source of continual personnel problems" and had stated he did not intend to renew the contract. It is also argued plaintiff's "uncontradicted facts" fall short of requiring the conclusion the contract was renewed as a matter of law.

No one disputes the fact a contract of definite duration existed from April 13, 1970, through April 12, 1972. Nor is it an issue whether plaintiff continued his employment after April 12, 1972. In this regard it is noted in 1 Williston on Contracts, (Third Ed., Jaeger), section 90, pages 288–290:

" * * * Where a contract of employment for a definite time is made and the employee's services are continued after the expiration of the time, without objection, the inference is, unless the contrary is to be implied, that the parties have assented to another contract for a term of the same length with the same salary and conditions of services, following the analogy of a similar rule in regard to leases. * * * ."

Likewise, 3A Corbin on Contracts, section 684, pages 230–231, has this statement:

"When parties have made a contract of employment for a definite period, at the expiration of that period the employment is often continued without making any new agreement about it. From this conduct, especially if the original contract was for one year's service, an inference will usually be made that the parties intend a renewal of the contract for a second similar period; such is said to be the 'presumption,' rebuttable in character. Even though the parties expressly agree upon a different salary, the presumption will be indulged as to the extension of time. Some courts have refused to recognize this presumption in cases where the original employment was for less than one year."

The general proposition of law from the foregoing texts which is relied on by plaintiff has support from many sources, including the following:

"The generally accepted rule is that a servant remaining in his master's service after the expiration of a definite term is prima facie presumed to continue under the terms of the old contract." Annot., 53 A.L. R.2d 384, 385, section 2(a).

In an annotation in 6 A.L.R.3d 1352, section 1(a), there is this statement:

"Where one who has been employed by another for a definite and fixed period continues in the service of the employer after expiration of the period limited by the original employment, it is presumed in the absence of anything to show a contrary intention that the continued services are to be rendered for the same period as that fixed by the original agreement. This is true, at any rate, where the parties intended the original term of employment to be no longer than one year. Most of the cases in which this rule has been applied involved contracts establishing a strict master and servant relationship; and there is accordingly no doubt as to the availability of the

presumption as to contracts of this nature. * * * ."

In 53 Am.Jur.2d, Master and Servant, section 31, pages 106–107, it is said:

"Where one who has been employed by another for a definite and fixed period continues in the service of the employer after the expiration of the period limited by the original employment, it is presumed, in the absence of anything to show a contrary intention, that the continued services are to be rendered for the same period as that fixed by the original agreement. This is true, at any rate, where the parties intended the original term of employment to be no longer than 1 year. While this presumption may be overcome by evidence showing that the continuation of the employment was pursuant to a new agreement, a change of the amount of the employee's compensation will not have this effect."

The testimony of Mr. Lasko and plaintiff is in direct conflict concerning whether the parties had an understanding on the issue of renewal. Lasko testified that after plaintiff withdrew his letter of resignation "he told me in this conversation that he would be then finished in April." He also testified that at that time he believed there was an understanding between the parties to the effect plaintiff's relationship with defendant would cease after April 1972; "That is what he had indicated to me, that he had had it."

■ The custom and practice of defendant with respect to employment contracts is a factor to be considered.

■ Assent to the formation of an informal contract is operative only to the extent that it is manifested. Manifestation may be wholly or partly by written or spoken words or by other acts or failure to act. The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents. Restatement, Second, Contracts, sections 20 and 21, Tentative Drafts Nos. 1–7.

In our opinion plaintiff failed to establish his theory in the trial court as a matter of law since the evidence bearing on the question whether the parties had manifested an assent to a renewal of the employment contract was not so overwhelming that but one reasonable inference or conclusion could be drawn from the proof adduced. *Arthur Elevator Co. v. Grove,* 236 N.W.2d at 388.

■ However, in light of the principles of law recognized in the citations heretofore referred to it could be logically maintained that the inference arising from plaintiff's continuation in employment after the expiration date of the written employment contract created a prima facie case relieving plaintiff of his duty of going forward with the evidence until the same was overcome by other evidence. 9 Wigmore on Evidence, (Third Ed.), section 2494.

This presents the question whether there is substantial evidence in the record to support the trial court's finding the inference had been overcome which inheres in its ruling.

■ The inference arising from continued employment may be rebutted or overcome by evidence showing a change of the terms of the contract or by proof of facts and circumstances showing that the parties understood that the terms of the 1970 contract were not to be applied to the continued service. *Sultan v. Jade Winds Construction Corp.,* 277 So.2d 574, 576 (Fla.App. 1973).

Plaintiff does not contend the trial court failed to recognize the presumption which arises from continuation of employment past the termination of a contractual relationship but challenges the court's fact finding the inference was rebutted.

Plaintiff had alleged in his petition the contract had been renewed for the one year following April 12, 1972.

The logic of this tactic is evidenced by this statement in 2 Corbin on Contracts, section 504, page 717, that, " * * * if the parties at the expiration of a written contract of employment, continue as before without a new express agreement, it will be

inferred that the service and the compensation are the same as before. If, however, the written contract was for a period of more than one year, a renewal contract *for a like period* is not enforceable without a writing." (Emphasis supplied).

In support of his position plaintiff points to *Mahoney v. Hildreth & Rogers Company,* 332 Mass. 496, 125 N.E.2d 788 and *Laubach v. Supply Co.,* 122 Iowa 643, 98 N.W. 511. In *Mahoney,* 332 Mass. at 498, 125 N.E.2d at 790, the court stated:

"The primary question for decision is whether the terms of the contract under which plaintiff was employed permitted his dismissal before the end of 1949. The contract under which he began work for the defendant on January 2, 1946, called for a salary payable weekly at the rate of $9,000 per annum. It contained no express provision as to the length of time it should continue in effect or as to the manner in which it might be terminated. To determine the intent of the parties in respect to these matters recourse must be had to the nature of the employment, the usages of the business, the prior negotiation, the situation of the parties, and in general the attendant circumstances. * * * [citing authorities].

"* * * *

"In our opinion the evidence was sufficient to warrant a finding that the parties intended the employment of the plaintiff to continue for at least a year. * * * [citing authority]. The plaintiff continued to work for the defendant until August 22, 1949, without, so far as appears, any further talk regarding the terms of his employment. If it were found that the original contract was for a year, we think that from the continuance of service by the plaintiff it could further be found that there was an implied renewal of the contract from year to year. * * * [citing authorities]. If the plaintiff's original contract was for a period terminating on December 31, 1946, and thereafter was renewed, in August, 1949, the plaintiff was employed for a term which did not end until December 31, 1949."

The *Mahoney* case is of little assistance to plaintiff in the case at bar. It merely stands for the proposition that the question of renewal is a fact question and the continuation of service beyond the terms of the contract is a fact to be considered. From the evidence introduced in *Mahoney,* which at one point was described as "meager," the fact finder *could* conclude there had been a renewal. See *Cinefot International Corp. v. Hudson Photo. Indus.,* 13 N.Y.2d 249, 246 N.Y.S.2d 395, 397, 196 N.E.2d 54, 56, 6 A.L. R.3d 1347.

In *Laubach,* supra, the contract of employment was for an indefinite period at a salary of $75 per month. If either party desired to terminate the relationship there was a requirement of 30 days notice. Plaintiff began working for defendant on May 1 and continued until August 31. On July 15 defendant sent plaintiff a notice of termination but it stated plaintiff's services may in fact be requested for longer than 30 days. Plaintiff contended the continuation of the employment relationship after the end of the 30-day period voided the notice of July 15 and therefore entitled plaintiff to 30 days pay from August 31, the day he received a termination notice. The *Laubach* court stated at 122 Iowa at 646–647, 98 N.W. at 512:

"There is no question that the measure of recovery is limited by the contract price, for no other compensation was named for his services. * * * [citing authorities]. But it does not follow that the entire contract is revived, and that all its provisions became operative. It was perfectly competent for the parties to make a new contract with reference to additional services, * * *. Here defendant had the right to continue plaintiff in its employment after the termination of the original contract. And if it did so, the contract price, in the absence of other evidence, would fix the measure of recovery. Whether or not the other elements of the contract were revived would, of course, depend upon the intention of the parties, to be gathered from what was said and done throwing light thereon. If there was nothing to indicate that defendant, by

allowing plaintiff to continue in its employ, did not intend to waive the termination of the contract, perhaps a court would be justified in saying that this alone would constitute a waiver. But where, as in this case, waiver is claimed from the fact that the employee continues at the work, and it appears that this is by favor, and to accomplish some particular purpose or object, it then becomes a question, under such facts as are here disclosed, for a jury to determine the intention of the parties."

Like *Mahoney*, *Laubach* also stands for the proposition the question of renewal is determined with reference to the intent of the parties which is determined by an analysis of the facts and circumstances.

In our opinion there is substantial evidence of facts and circumstances tending to establish that the parties understood that the terms of the written contract were not to be applied to the continued service.

Defendant had made it known to plaintiff when the written contract was negotiated that written employment contracts for a fixed period of time were not favored by defendant. No other employees, other than sales personnel, had written employment contracts for a fixed period of time. It was Mr. Lasko's understanding that after April 12, 1972, the only arrangement the parties had was that plaintiff would work for defendant for $21,500 a year producing and doing the news, and the details of this arrangement were communicated to plaintiff.

Shortly *after* expiration of the original term, plaintiff's work week was reduced from six days (as provided in the contract) to five days. There was evidence plaintiff was "riding high" on his popularity and was not worried about his employment prospects elsewhere, which thus weakened his original need for a written contract at the time he moved to Cedar Rapids. Plaintiff had earlier indicated he would be finished at the end of his contractual obligations. Finally, and most important, is the conversation sometime after April 12, 1972, between Edwin Lasko and plaintiff in regard to the unconcern of each that there was no

written contract. This is strong evidence neither felt bound by the terms of the original writing.

The foregoing evidence would justify the trial court in finding that any prima facie case created by the inference arising from plaintiff's continuation in employment after the expiration date of the written contract of 1970 had been overcome and that plaintiff had failed to sustain the burden of persuasion cast upon him to establish that the terms of the written contract had been extended to April 12, 1973.

Plaintiff's employment after April 12, 1972, was either at will or under a renewal of the original employment contract for a period of one year.

Since there is substantial evidence to support the trial court's finding there was no renewal of the written contract of 1970 we agree with the court's conclusion that at the time of plaintiff's discharge his employment was one of indefinite duration and terminable at will.

■ The contract being terminable at will plaintiff could have been discharged for virtually any reason. *Allen v. Highway Equipment Co.*, 239 N.W.2d 135, 139 (Iowa 1976).

Plaintiff's contentions are without merit.

III. Plaintiff contends "the law applicable to the facts in this case was erroneously applied by the Trial Court in finding there was no renewal of the employment contract from April 13, 1972, to April 12, 1973."

The law of the case is as set out in the previous division of this opinion. Defendant's "burden" was to rebut the inference the contract was continued. Quite obviously the above rules of law were correctly applied to the facts of this case.

IV. In view of the determination reached in division II of this opinion it is not necessary that we consider the contentions raised in the fourth and fifth issues presented for review.

In reaching our determination in this matter we have considered every other contention asserted or urged by plaintiff

whether specifically mentioned in this opinion or not and found none with merit.

The case is—Affirmed.